A. B. NELSON, Appellant, v. E. J. CHINGREN and F. J. KENNING, Appellees.

**Vendor and vendee:** RECISSION: OFFER TO PERFORM: RECOVERY OF
1   PURCHASE MONEY. Where the vendor of land is not in position
to convey title according to his contract the vendee is not re-
quired to make a tender or offer of performance before he can
rescind and recover back the amount he has paid.

**Same:** OFFER TO PERFORM. Statements of a vendee of land con-
2   temporaneous with the contract, that he did not have the funds
to make payment at the time of performance, will not relieve
the vendor from the duty of offering to perform, especially
where the vendee prior to the time for payment notified him
that he intended to fulfill his contract.

**Same:** TIME TO PROCURE TITLE. Where a vendor of land has no title
3   at the time of performance of his contract to convey he is not
entitled to time in which to procure it, but the vendee may have
a recission and recover back the advance payment.

*Appeal from Pocahontas District Court.*— HON. A. D.
BAILIE, Judge.

MONDAY, APRIL 9, 1906.

REHEARING DENIED, WEDNESDAY, NOVEMBER 21, 1906.

ACTION brought in equity to recover back moneys paid
as part of the purchase price of certain real estate described.
After trial on the merits, the court dismissed the petition,
and gave judgment in favor of defendants for costs.   Plain-
tiff appeals.— *Reversed.*

*M. E. Mack* and *Heald & Ralston,* for appellant.

*Healy Bros. & Kelleher,* for appellees.

BISHOP, J.— June 6, 1902, a contract in writing was
entered into between the defendants named, of the first part,

and plaintiff, of the second part, whereby defendants agreed to convey to plaintiff on March 1, 1903, a tract of one hundred and forty-four acres of land in Clay county, in consideration of the sum of $7,560. Of said sum plaintiff was to pay $500 cash in hand, and the sum of $5,060 on March 1, 1903. The balance of the consideration money was to be paid by the assumption of a mortgage then resting on the lands. The contract provides that the taxes for 1902 shall be paid by defendants, and that they shall furnish an abstract showing marketable title. " And, should title prove to be defective, defendants agree to correct such defects at their own expense." Provision is made for forfeiture of all rights of plaintiff, including money paid, by defendants, in case plaintiff fails to further pay as provided. It is conceded that plaintiff paid defendants the sum of $500 on the execution of the contract. The evidence makes it appear that, at the time of such contract, the legal title to the lands in question was in one John Logan. Further, that the latter had given a contract for sale to one Barkley, with a small payment made at the time, and the contract to be fully performed March 1, 1903. Further, that Barkley had given a contract for sale to defendants, with a small payment made at the time, and the contract to be fully performed March 1, 1903. In the meantime plaintiff learned the facts respecting the title to the property, and it is conceded that no change in such title situation took place thereafter and down to the time fixed for performance. March 1, 1903 (Sunday) plaintiff received from defendants by mail an abstract of title, and on the following day he placed this in the hands of an attorney for examination. On the next day plaintiff returned the abstract to defendants, with an opinion of his attorney as to the state of the title. In such opinion attention was called to the fact that the abstract was brought down to date January 9, 1903, only; that therefrom it appeared the legal title was in Logan, subject to two mortgages, one for $2,000 and one for $650, also to a mechanic's lien and

unpaid taxes.   Several minor defects were also pointed out.
With the abstract and opinion plaintiff inclosed a letter say-
ing, in substance, that he had been ready, able, and will-
ing to carry the contract to completion on the date fixed
therefor, " but, finding abstract contrary to contract, I de-
mand the return of money paid on said land."   Following
a talk over the telephone, defendant Chingren, who resided
at Fonda, went to Manson, the home of plaintiff, on March
4, 1903, and a conference was had, but no satisfactory ar- ·
rangement was arrived at.   On March 5, 1903, defendants
served upon plaintiff a notice of forfeiture.   Soon there-
after, Logan exercised his option to forfeit the Barkley con-
tract, and thus terminated the rights of defendants in the
property.   This action was brought by plaintiff to recover
back the advance payment as made by him.   Defendants
sought to defeat the action upon three grounds:   (1) That
plaintiff, being himself in default in that he had made no
tender or offer of performance, is without right to sue; (2)
that defendants, being advised by plaintiff that he would not
make further payment, owed no duty to be prepared for and
to tender deed when due, in performance of the contract;
(3) in any event, defendants had a reasonable time to per-
fect their title after being notified of defects therein and of
plaintiff's intention to perform.

I.   It is no doubt the general rule, as applied to suits
of this character, that the plaintiff must show, as a condi-
tion to his right to rescind and recover back, that he has him-
1. VENDOR AND        self tendered or offered to perform.   Such is
   VENDEE: re-
   scission;         the rule of the cases cited by counsel for ap-
   offer to
   perform:          pellant.   *Primm v. Wise,* 126 Iowa, 528;
   recovery of
   purchase          *Claude v. Richardson,* 127 Iowa, 623.   But
   money.
this rule does not obtain in cases where, from all the facts, it
is evident that a tender, if made, would have been unavail-
ing.   Thus, if the vendor has no title, and is therefore not
in position to perform on his own part, he cannot complain
that the vendee did not tender performance.   Under such

circumstances, a tender would be useless, and the law does not require the doing of a useless thing. *Webb v. Hancher,* 127 Iowa, 269; Primm v. Wise, *supra;* 26 Am. & Eng. Ency. 114. As we have seen, defendants were at no time in position so that a tender by plaintiff would have availed him anything. It was their duty under the contract to be ready to deliver title at the time fixed for performance, and, confessedly, they were not ready. They stood empty handed, and it was not for them to demand performance, or offer thereof, strictly in accord with the letter of the contract. As to plaintiff, the evidence makes it clear that he was in position to perform on the date set therefor, had defendants been ready and able on their part. Under the circumstances, this was all that was necessary on his part.

II. Coming to the second matter of contention, defendants insist that, prior to the time fixed for performance, plaintiff declared that he was and would be unable, by reason of lack of means, to carry out the contract. And it is the argument now made that defendants were entitled to rely on such declaration until advised to the contrary; accordingly, that they were not in default, although on March 1st they had not yet acquired title to the property. The primary trouble with this argument arises out of the proof. True enough, it appears that at the time the contract was made, in June, plaintiff stated to Chingren, in substance, that he did not have the money in sight to meet the March payment; that he expected to resell the land before that time, and in that way get money to fulfill his contract. And it appears that during the fall and early winter plaintiff did make efforts to sell the land, but without success. We do not see how defendants can claim anything from this. What was said by plaintiff did not enter into the contract, and, in testimony, neither defendant indicated by a word that they had changed their position by a hair's breadth on account of such statement. Moreover, plaintiff testifies — and on this point he is not con-

2. SAME:
offer to
perform.

tradicted — that some time before March 1st he told Chingren that he expected to carry out his· contract. " I told him I would have to get money from outside sources for settlement on the land." A careful reading of the evidence satisfies us that defendants had contracted for the land with Barkley as a matter of pure speculation, with intent not to acquire the title but to .find a buyer who would take the land and furnish the money to acquire the title from Logan, and this, at a profit to themselves. We do not say that this was not legitimate. We do say that, as against the buyer found by them, there is nothing in the situation to excuse them for their failure to be ready to deliver title on the day set for performance. It was not material, of course, that they did not have title at the time of the contract. The necessity for title arose and became absolute when the time came for making conveyance. *Dresel v. Jordan,* 104 Mass. 416; *Maryland Co. v. Kuper,* 90 Md. 529 (45 Atl. 197); *Jenkins v. Fahey,* 73 N. Y. 335; *Moss v. Hanson,* 17 Pa. 379; 26 Am. & Eng. Ency. 114.

III. We may concede, for the purposes of the case, that if defendants had title to the property on March 1st, and this was shown by the abstract furnished by them to plain-

**3. Same: time to procure title.** tiff, they would have been entitled to a reasonable time in which to remove or cure defects in such title appearing on the face of the abstract. But, as we have seen, they did not have title. They did not even have a complete abstract showing in whom the title was then vested. In this situation plaintiff was not bound to wait for them to go out and hunt up Barkley and Logan that they might acquire title. It was his right to rescind, and this he did. *Primm v. Wise, supra,* and cases cited. And upon rescission he became entitled to recover back the advance payment made by him. *Primm v. Wise, supra.*

From what we have said, the conclusion follows that there was error, in that judgment should have gone for plaintiff, as demanded, and the cause will be remanded that such may be had.— *Reversed.*