JAMES I. DOLLIVER, Appellant, v. CONRAD ELMER, Appellee.

No. 42424.

APRIL 2, 1935.

REHEARING DENIED SEPTEMBER 27, 1935.

Helsell, McCall & Dolliver, for appellant.

Frank S. Lovrien, for appellee.

RICHARDS, J.—On April 16, 1931, a land sale contract was entered into between the plaintiff and defendant. By its terms defendant agreed to sell plaintiff certain real estate for $20,000, of which plaintiff paid defendant $1,000 on the date of the contract, and the remainder of the purchase price was to be paid in cash, property, and mortgage back, on March 1, 1932, upon the delivery of good and merchantable title by defendant with an abstract showing same. The contract provided that the times of payment of said sums of money were of the essence and an important part of the contract, but contained no specific statements as to the right of forfeiture. Shortly before March 1, 1932, the title to the real estate defendant so agreed to sell was acquired by the Des Moines Joint Stock Land Bank, through a sheriff's deed pursuant to a foreclosure of a mortgage against persons not parties to this action, previously holding the title. Previous to March 1, 1932, said Land Bank had entered into a contract to sell this real estate to defendant in the event there was no redemption in the foreclosure action, but on March 1, 1932, defendant had acquired no title thereto; his only interest being that which he had acquired by his contract to purchase from the Land Bank. Defendant did not acquire title until some time in December, 1932. Plaintiff claims that on March 1, 1932, he was ready, able, and willing to pay defendant the balance he had agreed to pay on that date, that is, $1,500 cash, and to convey to defendant certain Sioux City property, as part of the consideration as agreed in the contract in controversy, and claims that he then offered to carry out his agreements with defendant, but that defendant, having no title, was unable to perform, and on account of that fact the plaintiff has rescinded the contract and demanded the return of the $1,000 paid on the purchase price. The petition in equity in this action was filed December 23, 1932, to recover the $1,000 payment, and to

establish à vendee's lien. On February 3, 1933, the defendant filed a cross petition praying specific performance of the contract against the plaintiff. The court dismissed both plaintiff's petition and the cross petition, and entered judgment against plaintiff for the costs, from which decree this appeal was taken by plaintiff.

■■■ Defendant having been wholly unable to convey the land on March 1, 1932, because he did not have the title, there can be no doubt about the general proposition, that out of this situation there accrued to plaintiff the remedy of rescinding the contract and demanding the return of the purchase money he had paid. Wilhelm v. Fimple, 31 Iowa 131, 7 Am. Rep. 117; Nelson v. Chingren, 132 Iowa 383, 106 N. W. 936. But the defendant denies that plaintiff had the right to rescind the contract, first, because plaintiff was himself in default for not having tendered performance on his part, and for not having demanded performance on defendant's part, and, second, because plaintiff leased the premises for 1932 and at all times kept possession of the lease and was in constructive possession of the land until the tender of performance by defendant on December 31, 1932, and, third, because no rescission was made or attempted by plaintiff. The determination of the correctness of these claims made by defendant is decisive of this case.

The record discloses that plaintiff at no time made a formal tender of the $1,500 payment agreed to be made on March 1, 1932, nor of a deed conveying the Sioux City property. As bearing thereon, we quote from Nelson v. Chingren, 132 Iowa 383, 385, 106 N. W. 936, 937:

"It is no doubt the general rule, as applied to suits of this character, that the plaintiff must show, as a condition to his right to rescind and recover back, that he has himself tendered or offered to perform. Such is the rule of the cases cited by counsel for appellant. Primm v. Wise, 126 Iowa 528, 102 N. W. 427; Claude v. Richardson, 127 Iowa 623, 103 N. W. 991. But this rule does not obtain in cases where, from all the facts, it is evident that a tender, if made, would have been unavailing. Thus, if the vendor has no title, and is therefore not in position to perform on his own part, he cannot complain that the vendee did not tender performance. Under such circumstances, a tender would be useless, and the law does not require the doing of a useless thing."

See, also, Voorhees v. Baier, 194 Iowa 1320, 191 N. W. 125. Following these authorities, it appears from the record before us that plaintiff was not required to make a formal tender, it being a conceded fact, known to plaintiff and defendant on March 1, 1932, that defendant had no title to convey. The parties admit having a conference on about that date concerning the contract, but the record contains a sharp conflict as to what occurred. Plaintiff testified that defendant stated he could not get a loan that was necessary to complete his purchase of the land from the Land Bank, and hence was unable to deliver title; that on account of this statement of fact by defendant, he, plaintiff, saw no necessity of making a formal tender although he had fully arranged to, and was able and in position to pay the $1,500 and convey the Sioux City property; that he had submitted to defendant for approval the Sioux City abstract of title in December, 1931, and in the same month had delivered to defendant plaintiff's opinion as to the defects to be cured in the abstract of title to the land defendant had agreed to convey to plaintiff. On the other hand, defendant testified that on March 1, 1932, plaintiff said he was not ready to perform the contract, did not have and could not raise the money, and that plaintiff made the same statement again about a month later, and that plaintiff had never made any objection to the delay in defendant obtaining title from the Land Bank, all of which plaintiff denied. A consideration of the whole record leads to an acceptance of plaintiff's testimony as having the greater weight, and in considerable measure this follows from the inconsistencies found in defendant's version of the facts on and after March 1, 1932. Defendant claims plaintiff never demanded performance and never objected to the delay in defandant's obtaining title. But it is uncontroverted that on April 1, 1932, the plaintiff by letter stated to defendant that the time was past for performance of contract and plaintiff assumed that defendant was still unable to secure a loan to acquire the land from the Land Bank, and in this letter plaintiff specifically requested the return of the $1,000 deposit, with interest. On April 23, 1932, plaintiff again wrote the defendant calling attention to the letter of April 1, asking for the return of the $1,000 deposit, stating that plaintiff did not understand why he had not heard from the defendant, stating that time for performance is long past, and, having not received anything for his money, the plaintiff is entitled

to its return, and asking that defendant remit. Again on May 20, 1932, is a letter from plaintiff to defendant requesting a return of the money because defendant has been unable to complete the deal as per the written agreement. Again, on July 25, 1932, plaintiff wrote defendant calling attention to the previous letters, stating that defendant is in default and is not giving plaintiff any value for the $1,000 paid, stating that demand has been made for that money, and that suit will be instituted to recover this sum if necessary. Again, on August 9, 1932, plaintiff wrote defendant that there was no change in his position on the matter, that defendant owes plaintiff $1,000, and that plaintiff insists on payment or settlement being made. In view of these letters, defendant's testimony that plaintiff never made objection to the delay of defendant in obtaining title is not consistent with the established facts. We may also mention defendant's testimony that he would have placed a loan on another farm and would have obtained title from the Land Bank if plaintiff had not told defendant in March, 1932, that plaintiff could not perform. There is about this testimony an atmosphere of doubt, produced by the fact that after plaintiff on April first, and subsequent dates, specifically claimed that defendant was in default and demanded return of the purchase price paid, the defendant was wholly unmoved to acquire the title in the manner he says he would have done had the demands been made a month earlier on March first. A striking inconsistency exists between this testimony of defendant and a series of letters written by him and by others for him, to the Land Bank, during a period commencing in February and continuing into the fall of 1932. In these letters defendant repeatedly states that it is impossible for him to borrow the money to complete the payment to the Land Bank for the purchase of the land, and asking further extension of time for so doing, on account of the fact that defendant was still making efforts to borrow the money. One of these letters was dated August 12, and subsequent letters bearing no date are to the same general import. Defendant explains the inconsistency pointed out by testifying that the statements in the letters to the Land Bank were made for the purpose of fooling or deceiving the Land Bank. Needless to say, this explanation does not add anything to quality of defendant's testimony, and, further, leaves defendant in a position where he either was wholly unable to acquire the land and convey to plain-

tiff, or else he was purposely failing and refusing to do so. The first horn of this dilemma entitled plaintiff to rescind, finding as we do that under the facts plaintiff, as a condition to such rescission, owed no duty to make a formal tender to defendant who could not convey, and finding as we do that plaintiff was able and intending on March 1, 1932, to execute his part of the contract. The other horn of this dilemma, that is, the situation if defendant was able to convey, but failed and refused to do so, for a period of ten months, should be, and we think is, with the other matters in the record, sufficient evidence of a mutual abandonment amounting to a rescission of the contract by both parties. In either event plaintiff was entitled to recover back the portion of the purchase price in defendant's hands. That there was an abandonment by defendant finds support in the fact that the Land Bank finally served on defendant a notice of forfeiture of the contract between the defendant and the Land Bank; that contract providing for forfeiture. At the expiration of the thirty days notice on or about November 5, defendant's rights under the contract were terminated. The title which he subsequently acquired in the latter part of December was a new purchase arrangement on terms more favorable to defendant than those of the original contract. It is also stipulated in the record that between March and November or December, 1932, there was a depreciation of the market value of the land in controversy amounting to $33\frac{1}{3}$ per cent. As stated, under these circumstances an inference easily arises that defendant chose to abandon his contract to convey to plaintiff in order to acquire the property eventually from the Land Bank upon considerations more favorable to the defendant than provided originally. Circumstances taken together may manifest an intention on the part of a party thereto to abandon his contract. Miller v. McConnell, 179 Iowa 377, at page 386, 157 N. W. 943.

■■■ That plaintiff is entitled to a vendee's lien upon the real estate that was the subject of the contract seems to be conceded by appellee in argument wherein he says that appellee is not concerned about the situation as to the right of plaintiff to a vendee's lien. We find that this court has recognized such right in a fact situation similar to that under consideration in Larson v. Metcalf, 201 Iowa 1208, 207 N. W. 382, 45 A. L. R. 344, and Lee v. American Trust & Sav. Bank, 209 Iowa 609, 228 N. W. 570. Plaintiff was entitled to a vendee's lien.

■■■ The claim of defendant, that plaintiff leased the premises in controversy for 1932 and kept possession of the lease and constructive possession of the land, did not affect plaintiff's right to rescind. This is on account of the fact situation. The lease was made with the consent and express approval of the defendant. The plaintiff, on May 20, 1932, requested the Land Bank, the then owner of the land, to advise plaintiff what they wished done with the lease so that plaintiff could act accordingly. Plaintiff received no directions from the Land Bank and the matter stood in statu quo until the trial of the case at which time the share of the crop constituting rent still remained on the premises; plaintiff having collected no part of the rent. The plaintiff in his pleadings tendered the lease and the benefits thereunder to the defendant. In Culbertson v. Smith, 193 Iowa 436, at page 442, 187 N. W. 38, 40, this court said:

"In so far as the parties mutually delayed the date of settlement, it was to the mutual interest of both of them that the property should be appropriately occupied. Possession thus taken by the plaintiff would not necessarily stand in the way of a rescission, even though it were impracticable to oust a tenant while his crops were growing." See, also, McLain v. Smith, 201 Iowa 89, 202 N. W. 239.

The decree of the district court is reversed.—Reversed.

ANDERSON, C. J., and ALBERT, DONEGAN, PARSONS, and HAMILTON, JJ., concur.