WORTH W. FITCHNER et al., Appellees, v. W. F. WALLING et al., Appellants.

No. 44165.

MAY 3, 1938.

J. P. Shoup, O. P. Bennett, and Prichard & Prichard, for appellants.

Stewart & Hatfield, for appellees.

KINTZINGER, J.—In October, 1928, plaintiffs-appellees and defendants-appellants entered into a written contract by which the appellants sold appellees 80 acres of real estate in Woodbury County for a consideration of $11,000, a deed conveying a clear title to be delivered to the vendees on payment of the purchase price therefor on March 1, 1939. The consideration was evidenced by a promissory note in the sum of $11,000 payable to appellants (vendors) on March 1, 1939, with interest thereon at 5 per cent per annum, payable annually, from March 1, 1929; the taxes after 1928 to be paid by the appellees (vendees) under the contract. The contract also provides that:

"Payments having been made as above the said first parties agree to convey to said second parties the above described real estate by warranty deed showing good title in first parties, clear and free of all liens and encumbrances whatsoever.

"It being understood * * * the said second parties have the right and option to pay One Hundred Dollars ($100.00) or any multiple on any interest payment date during life of this contract, and, it is further agreed when the full amount has been paid if the same is paid before maturity said parties agree to transfer property at that date. Possession to be given said second parties on March 1, *1929*."

Under this contract appellees went into possession of the property on March 1, 1929.

Appellees failed to pay any of the taxes due on said property after the payment of the first half of the taxes for 1930; appellees also failed to pay the two interest payments of $550 each, due March 1, 1932, and March 1, 1933, as required by the contract, although notified they were due.

At the time of the execution of the contract, there was an outstanding mortgage of $12,000 against the property held by the Equitable Life Insurance Company of Iowa. This mortgage was executed by a former owner and was duly extended under an agreement between the mortgagee and appellants herein, to whom the real estate was transferred. This mortgage had been duly recorded, and appellees also had personal knowledge thereof and were advised that appellants sold an adjoining 80 acres and would pay off $7,000 on the $12,000 mortgage, reducing it to about $5,000.

The appellants having defaulted in the payment of interest on the mortgage, foreclosure proceedings were commenced for the balance due thereon. A receiver, appointed in the foreclosure proceedings, took constructive possession of the property, and leased it to appellees herein on shares and $4 an acre for hay and pasture land. The mortgage was foreclosed and a sheriff's deed was issued thereunder to the Equitable Life Insurance Company of Iowa, mortgagee, on September 6, 1934.

Appellees contend that, because of the foreclosure, appellants have been completely divested of the power to perform their agreement to transfer the property in question to the appellees, free from all liens, on March 1, 1939, and therefore ask for a rescission of the sale contract and that the $11,000 purchase note be cancelled and returned to appellees. The lower court entered a decree rescinding the contract, cancelled the note, and ordered its return to appellees. Defendants appeal.

. The rents payable to the receiver under the lease were much less than the interest and taxes payable by appellees under the contract. The record also shows that the interest payments due from appellees under the contract were considerably more than the interest due the mortgagee. The record also shows that the appellants were unable to pay interest due the mortgagee because of appellees' failure to pay the interest due the appellants under the contract.

I. Appellants contend that by reason of appellees' failure to pay the interest upon the $11,000 note for two years, and because of appellees' failure to pay the taxes as agreed upon in the contract, appellees have failed to perform their part of the agreement. The unpaid interest and taxes referred to were delinquent and due prior to the commencement of the foreclosure proceedings by the mortgagee. These interest payments

amounting to $1,100 and the delinquent taxes amounting to about $165 were due and payable by the appellees under their agreement regardless of any delinquency on the part of appellants upon the mortgage indebtedness. The interest payments due appellants under the contract and note constitute an independent obligation of appellees who were legally bound to pay such interest and taxes as they became due under the terms of the contract.

In Cullumber v. Stahl, 200 Iowa 104, l. c. 108, 203 N. W. 270, 272, this court said:

"As we construe the contract, the covenant on the part of appellees to remove and pay off the outstanding mortgage on the premises was entirely independent of the covenant on the part of appellants to pay the interest on the deferred payment and one-half of the taxes. * * * The payment of the outstanding mortgage * * * was not a condition precedent to the obligation on the part of appellants to pay the interest * * * and * * * taxes * * * the obligations * * * were independent, rather than dependent."

The record shows that the appellants were not in default on any of their payments due the mortgagee until after appellees were required to pay the interest and taxes due to appellants under the contract in question.

As the record shows that appellees were in default under the land contract by failing to pay the annual interest payments on March 1, 1932, and March 1, 1933, appellees are not entitled to invoke a court of equity to rescind a contract which they themselves have failed to perform. Copple v. Morrison, 221 Iowa 183, 264 N. W. 113; Cullumber v. Stahl, 200 Iowa 104, 203 N. W. 270.

Appellees seek to rescind the entire contract and cancel the note, including all interest due thereon, given in payment of the purchase price of said land. Appellees were the first to default in their obligations under the contract and note in failing to pay the taxes and the interest which became due on March 1, 1932, and March 1, 1933. They were in default at that time and judgment could have been recovered against them thereon, as these payments were an independent obligation of the contract. They now seek a cancellation of their entire obligation,

including their indebtedness on the contract before any default was claimed to have been made thereon by appellants.

Appellees have had the use and occupation of the real estate in question for two years or more without the payment of any interest due under the contract and required thereby. It would be inequitable to permit them to rescind the entire contract when they have failed to perform or offer to perform their obligations thereunder. The performance of at least this part of the contract is required by them under the well-known equitable maxim that, "He who seeks equity must do equity." Dow v. McVey, 174 Iowa 553, 156 N. W. 706; Fowler v. Dieleman, 192 Iowa 563, 185 N. W. 79; Perfection Tire & Rubber Co. v. Kellogg-Mackay Equipment Co., 194 Iowa 523, 187 N. W. 32; Witmer v. Polk County et al., 222 Iowa 1075, 270 N. W. 323.

Appellants contend that under the facts in this case it was necessary for the appellees to show a performance of their own obligations under the contract before they are entitled to secure a rescission of the entire contract.

We are constrained to hold that where a party himself is in default on payments required to be made by a contract, he is not in a position to secure a rescission of the contract. Cullumber v. Stahl, 200 Iowa 104, 203 N. W. 270; Hafner v. Land Co., 246 Mich. 465, 224 N. W. 630; Stryker v. Marschner, 274 Mich. 205, 264 N. W. 344; Hyman v. Boyle, 239 Mich. 357, 214 N. W. 163, 164. In the latter case the court said:

"Plaintiff is here seeking the aid of a court of equity. To entitle him to relief, he must present such a case as appeals to the conscience of the court."

Prior to the commencement of the foreclosure proceedings the mortgagee, through its agents, advised appellants that all it wanted was to get its money out of the property. There was no agreement at that time for an extension of the mortgage or for extension of the period of redemption; but on October 11, 1933, after the foreclosure sale, but before the expiration of the period of redemption, the appellants secured an agreement with the mortgagee, or titleholder, that appellants could repurchase the property by the payment of $6,250 in future annual payments. This contract was, in effect, an extension of the period of redemption and is still in force. Under it appellants are still

in a position to redeem the property from the encumbrance thereon at any time prior to March 1, 1939.

As the appellants have made arrangements under which it is still possible for them to perform their part of the contract of sale on the first of March, 1939, they are not technically in default, because the time for performance by them has not arrived. The amount due from appellants to the Equitable Life Insurance Company of Iowa, mortgagee, is only $6,250, while the amount due from appellees to the appellants on the land contract is nearly twice that amount. As the appellants have placed themselves in a position whereby they have until March 1, 1939, to redeem the property from the mortgagee, it cannot be said that it will be impossible for appellants to perform their contract with appellees until the time for performance arrives. No evidence has been introduced tending to show the present value of the land, and as the appellees owe the appellants practically double the amount necessary to redeem from the Equitable Life, we cannot say that it will be impossible for appellants to refinance their affairs in such a manner as to enable them to perform their contract with appellees when the time for performance arrives.

The record shows that at the time this contract was made the vendors had title and possession of the property. At that time a mortgage of $12,000 existed against the 80 acres in question, combined with another 80 acres adjoining the same. Appellants, soon after the contract was entered into, sold the adjoining 80 acres and from the proceeds paid off $7,000 on the $12,000 mortgage, leaving an encumbrance of only $5,000 against the property in question. It must, therefore, be found that the vendors were good-faith contractors and had a right to assume that if the vendees complied with the terms of their agreement that they, the vendors, could furnish a clear title when the time for performance of the contract arrived.

"The vendor may of right perfect his title at any time before the period fixed for the completion of the contract, and the fact that his title was incomplete at the time the contract was made, is immaterial, provided the matters necessary to make the title good can be accomplished before the time specified for making the conveyance." Maupin on Marketable Titles to Real Estate, 3d Ed., 872; Armstrong v. Breen, 101 Iowa 9, 69 N. W.

1125; Copple v. Morrison, 221 Iowa 183, 264 N. W. 113; Cullumber v. Stahl, 200 Iowa 104, 203 N. W. 270; Dresel v. Jordan, 104 Mass. 407; Gibson v. Newman, 1 How. (Miss.) 341; Andrew v. Babcock, 63 Conn. 109, 26 A. 715; Dennis v. Strassburger, 89 Cal. 583, 26 P. 1070; Lemle v. Barry, 181 Cal. 6, 183 P. 148; Handley v. Tibbetts, Ky., 16 S. W. 131; Whitney v. Crouch, 105 Misc. 268, 172 N. Y. S. 729; Monsen v. Stevens, 56 Ill. 335; Moot v. Business Men's Inv. Assoc., 157 N. Y. 201, 52 N. E. 1, 45 L. R. A. 666; Maryland Const. Co. v. Kuper, 90 Md. 529, 45 A. 197; Mincey v. Foster, 125 N. C. 541, 34 S. E. 644; Garber v. Sutton, 96 Va. 469, 31 S. E. 894; Runnels v. Pruitt, Tex. Civ. App., 204 S. W. 1017; Gray v. Smith, C. C. Cal., 76 F. 525; Luette et al. v. Bank of Italy Nat. Trust & Savings Assn., 9 Cir., 42 F. 2d 9.

In Armstrong v. Breen, 101 Iowa 9, l. c. 14, 69 N. W. 1125, 1127, this court said:

"It is contended in argument that Mr. Breen had no title to the land at the time he made the contract. This is not alleged as a ground for a rescission; but, if it were, the evidence would fail to sustain it, for it appears that Mr. Breen would have been able to make perfect title by the time required by the contract."

The general rule in the United States seems to be that the vendor may perfect his title at any time before the period fixed ·for the completion of the contract.

Appellees contend that appellants have made it impossible to perform their part of the contract and have cited several cases holding that where the record shows that one of the parties is unable to perform, the other party is entitled to a rescission of the contract. Wilhelm v. Fimple, 31 Iowa 131, 7 Am. Rep. 117; Martin v. Roberts, 127 Iowa 218, 102 N. W. 1126; Nielson v. Benedict, 196 Iowa 173, 194 N. W. 83; Dolliver v. Elmer, 220 Iowa 348, 260 N. W. 85. An examination of these cases, however, will show they are distinguishable from the case at bar because they show without dispute that it was impossible for one of the parties to perform his part of the contract.

Also in those cases it appears that the party asking for the rescission had not defaulted on any of his agreements. In the case at bar, however, appellees have defaulted on their agreement in failing to pay the interest due upon their $11,000 note and

in failing to pay the taxes in compliance with their agreement before any default was made by appellants. These payments from appellees were due regardless of the failure of the appellants to meet their obligations to the mortgagee.

Appellees also contend that because the appellants have no title to the property at this time they will be unable to secure title in the future. Upon this question this court in Nelson v. Chingren, 132 Iowa 383, 1. c. 387, 106 N. W. 936, 938, said:

"It was not material, of course, that they did not have title at the time of the contract. The necessity for title arose and became absolute when the time came for making conveyance."

The time for making conveyance in the case at bar has not yet arrived, and appellants, by arrangements made with the present titleholder, are permitted to redeem when the time comes for performing their part of the agreement.

In Copple v. Morrison, 221 Iowa 183, 1. c. 188, 264 N. W. 113, 116, this court said:

"Under the contract the deed was not due to the grantees, * * * until 1943 * * *. If therefore, before a tender of performance on the part of the grantees putting the grantor in default, the grantor had placed himself in a position to convey, the grantees could not possibly be harmed."

Likewise in the case at bar, if the appellants can, by the first of March, 1939, place themselves in a position to convey, the appellees in this case cannot be harmed.

The case of Cullumber v. Stahl, 200 Iowa 104, 203 N. W. 270, is almost identical in its facts with the case at bar, except that in that case there was a clear agreement on the part of the vendor to pay an outstanding mortgage. In the case at bar there was no such agreement, but the land contract herein implies an obligation on the vendors to clear any existing encumbrance against the property when the time arrives for them to convey the property.

In Cullumber v. Stahl, 200 Iowa 104, 1. c. 107, 203 N. W. 270, 271, this court said:

"It is the contention of appellants [vendees] that the clause of the contract obligating appellees [vendors] to pay the outstanding mortgage upon the premises, and the clause requiring appellants to pay interest on the balance of the purchase price

and one half of the taxes on the premises, were interdependent, and that appellees cannot recover for a breach of the conditions of the contract on the part of appellants without first complying with the terms and conditions of the contract on their own part, by paying the outstanding mortgage. We do not construe these clauses of the contract as being dependent. The primary obligation of appellees, under the terms of the contract, was to execute and deliver to appellants a warranty deed, together with an abstract of title showing a clear record title in appellees. Appellants, on their part, were to have possession of the premises, and undertook and agreed to pay the balance of the purchase price, *with 5 per cent interest thereon, payable on the first day of March of each year during the life of the contract,* and until, under the terms of the contract, a deed was to be executed and delivered and a mortgage given back. * * * *As we construe the contract, the covenant on the part of appellees to remove and pay off the outstanding mortgage on the premises was entirely independent of the covenant on the part of appellants to pay the interest on the deferred payment and one half of the taxes.* * * * The mortgage indebtedness was reduced to $8,200. Appellants still retained $15,000 of the purchase price, and were in possession of the premises. * * * [Italics ours.]

"The payment of the outstanding mortgage on the premises by appellees was not a condition precedent to the obligation on the part of appellants to pay the interest on the deferred payments and one half of the taxes as the same became due. As previously stated, the obligations on the part of the parties were independent, rather than dependent. * * * Appellants were in a position to fully protect themselves by having in their possession $15,000 of the unpaid purchase price, far in excess of the amount due on the outstanding incumbrance. Under the terms of the contract, on the first day of March they could have paid or tendered the balance of the purchase price, and demanded the execution and delivery of a warranty deed by appellees, together with an abstract showing a clear title to said premises in appellees. It therefore rested within the power of appellants to have placed appellees in default on any first day of March, had they seen fit so to do. But we think that the covenants of the contract are so independent that appellants are not relieved from their obligation to pay the interest and taxes, as required by the terms of their contract, merely because appellees had not

paid and removed the outstanding incumbrance upon the premises when the same became due.

"Nor do we think that appellants were entitled to a rescission of the contract and a recovery of the portion of the purchase price that had been paid, because of a failure on the part of appellees to perform the independent covenants of the contract and remove the outstanding incumbrance at the very date it became due. Appellants have had possession of the premises at all times since the 1st of March, 1920. They are admittedly in default upon the payment of interest and taxes, as required by the terms of the contract. They are not entitled to rescind said contract and recover the purchase price paid until they at least put appellees in default upon the subject-matter of the contract, by demanding deed and conveyance of title free and clear of all liens and incumbrances. This they have not done; and they have been at all times in position to amply protect themselves, in view of the balance of the purchase price which remains in their hands. They have not tendered performance on their part, nor demanded performance of the contract on the part of appellees by conveyance of the premises, in accordance with the contract."

We have quoted at length from the foregoing case because we are constrained to hold that the ruling announced therein controls to a great extent our ruling in this.

II. Appellees also contend that the execution of a lease by the vendors to the vendees after the *mutual rescission* of the sale contract estops the vendors from reasserting their rights under the contract. The trouble with this contention, however, is that there never was any mutual rescission of the sale contract between the parties.

It is true that by the foreclosure proceedings commenced by the Equitable Life Insurance Company of Iowa, mortgagee, a receiver was appointed who leased the land in question to the vendees. This lease was executed by the receiver under authority given him under the foreclosure proceedings; but, as shown by the preceding division of this opinion, such foreclosure proceedings did not constitute a rescission. The efforts made by the vendors, and expenses incurred by them in securing an extension agreement to redeem the property by March 1, 1939, clearly indicate there was no *mutual rescission* of the land contract

between the parties; but that it was always appellants' intention to place themselves in a position to enable them to fulfill their contract by the first of March, 1939.

Appellees also contend that subsequent leases entered into between the vendors and the vendees also amounted to a rescission of the contract. Such leases, however, contain the following special agreement:

"It is further agreed and understood that this lease shall not be in effect until all existing debts and obligations whatsoever of the second parties, or any of them, to the first party have been fully paid and performed, or this condition has been waived by a definite arrangement for payment of fulfillment agreed to in writing by a duly authorized representative of the first party."

The burden of proof was upon plaintiffs to establish the rescission of the contract. It can hardly be said that a rescission has been established by the execution of a lease which by its very terms was not to become effective unless the vendees paid all their obligations to the vendors.

The record shows without dispute that the vendees never paid or performed any of their obligations to the vendors. It is therefore clear that such leases cannot be considered a rescission of the original contract of sale. This conclusion is supported by the following authorities: McLain v. Smith, 201 Iowa 89, 202 N. W. 239; Culbertson v. Smith, 193 Iowa 436, 187 N. W. 38.

In McLain v. Smith, 201 Iowa 89, l. c. 98, 202 N. W. 239, 243, this court said:

"The burden of proof is on the plaintiff * * * to show that there was an intention on the part of Smith to rescind said contract by what he did; and we feel that plaintiff has not sustained this burden of proof, as the law requires that the proof of rescission of a written contract by parol testimony must be such as to be clear and convincing, and satisfy the mind that a rescission was the intent in the minds of the parties. Mortensen v. Frederickson Bros., supra [190 Iowa 832, 180 N. W. 977]."

The lower court held that under the record herein plaintiffs were entitled to a full rescission of the contract of sale, and a full cancellation of the $11,000 note given for the purchase price of the land. From the foregoing discussion, however, an

irreparable damage would be done to appellants if the decree of the lower court is affirmed. It might likewise result in great loss to appellees if the decree is reversed without making a provision for the protection of appellees against the possibility of an assignment of their note without securing a release of the mortgage indebtedness, or a payment thereof, out of the proceeds of the sale of said note.

Appellants have been put to considerable trouble and expense in financing an extension of the period of redemption and would suffer irreparable loss unless they be allowed to use the $11,000 note conditionally to enable them to secure a release of the mortgage indebtedness on or before March 1, 1939.

■ This is an equitable proceeding and, under the broad powers of a court of equity, we deem it equitable and proper under the peculiar facts of this case that a provision for the protection of both parties be provided in the decree and the appellants be only restrained from negotiating said note, unless adequate provision be made by appellants either for the release of the mortgage indebtedness of the Equitable Life Insurance Company of Iowa, or for the payment thereof out of the proceeds of the sale of said note.

It is therefore our judgment that the decree of the lower court be modified so as to permit the sale of said note on condition that the proceeds thereof be applied toward the payment of said mortgage indebtedness, or that it be otherwise cancelled and released on or before March 1, 1939.

For the reasons hereinabove expressed, it is our conclusion that the lower court erred in entering a complete rescission and cancellation of the contract and note in question. The judgment of the lower court is therefore hereby reversed and remanded for a decree in harmony herewith.

If, however, the mortgage indebtedness referred to has not been cancelled or released on or before March 1, 1939, then the judgment of the lower court is to stand affirmed.—Modified and reversed and remanded with instructions.

STIGER, C. J., and DONEGAN, RICHARDS, SAGER, MILLER, and HAMILTON, JJ., concur.