John Logan Trammel, Appellee, v. C. H. Kemler, Appellant.

No. 44612.

APRIL 4, 1939.

F. E. Northup, for appellant.

Roy L. Pell, for appellee.

OLIVER, J.—This is an action brought by appellee, John Logan Trammel, against appellant, C. H. Kemler, to recover the amounts paid upon a contract for the purchase of real estate on account of appellant's alleged failure to perform. The suit, originally instituted at law, was, on motion of defendant, transferred to equity. Appellee was a disabled war veteran, had little education, was weak mentally, and was incapable of transacting business. He had been awarded $7,000 by the United States Government in addition to monthly payments. Appellant owned a twenty-acre tract of real estate which was incumbered by a mortgage for $4,000. Lot 5 of this tract was a 6½-acre improved lot. In June 1931, appellant contracted to sell lot 5 to appellee for $4,600, payable $1,500 down, and the balance at $50 per month with optional advance payments to stop interest, and deed when contract was paid in full. The contract provided appellant would secure the release. of lot 5 from the $4,000 mortgage when $2,250 was paid upon the contract. By

August 5, 1931, appellee had paid $2,400, and by December 1932 a total of $3,300 on principal and $119 interest.

After August 5, 1931, appellee, at various times, requested appellant to secure the release of lot 5 from the mortgage. On these occasions appellant told appellee he would take care of it, or was taking care of it, and everything was getting along fine, that appellee was paid ''way ahead'' and not to worry that it was all right, that when appellee made another payment appellant would get the mortgage released. Appellee believed these statements for a considerable length of time and continued making payments. Later appellant advised appellee not to continue payments since he had paid so far ahead and he didn't know how he was to come out yet. Appellee also made certain improvements upon the buildings situated upon said lot and paid insurance and taxes. He testified that for a time he relied upon appellant's promises to take care of the mortgage, but finally concluded appellant would not do so and made no more payments—that he thought he was going to lose it all because of the failure to pay the mortgage and thought he was losing enough—that he thought the deal was crooked—that they had taken all he had—that the mortgage kept him worried—that he was willing to pay out, if appellant had secured its release.

After appellee had paid about $3,000, he talked to the holder of the mortgage and learned appellant had paid only $850 to apply thereon. In August 1933, the holder of the mortgage instituted foreclosure proceedings against the entire twenty-acre tract, appellant and appellee were made parties defendant, trial was had, judgment in foreclosure entered, and on January 13, 1934, the property was sold at sheriff's sale and a receiver appointed to take possession of the property and collect the rents and profits.

A few months after the foreclosure sale the certificate holder secured a quitclaim deed from appellee. The receiver for the property handled this matter and testified that any rights appellee had against appellant were not included therein, nor was the assignment of the contract so included, the only purpose being the right of possession during the few remaining months of the period of redemption.

The record shows that prior to the trial of the foreclosure suit an attempt was made by appellant to induce the mortgage holder to divide the mortgage and thereby reduce the amount

standing against lot 5. This proved unsuccessful and thereafter appellant apparently abandoned all effort to save the property. In January 1935, sheriff's deed issued.

A few months later appellee served upon appellant notice of rescission and demand for return of the amounts paid by him and thereafter instituted this suit. The trial court credited appellant with rents and profits against which was charged the disbursements made by appellee in caring for the property, decreed rescission of the contract and entered judgment against appellant for $3,299, from which decree this appeal has been taken.

■ I. Appellant urges that the right to maintain this action was barred by the quitclaim deed given by appellee to the holder of the sheriff's sale certificate prior to the expiration of the period of redemption. However, appellee had already been technically dispossessed by the appointment of the receiver for the property in the foreclosure proceedings and said receiver had been in constructive possession for some time prior to this. Moreover, appellant had evinced no intention to make redemption and had, in effect, abandoned all the mortgaged property and this contract. Therefore, appellee was faced with the alternative of making such redemption and thereby paying a total amount greatly in excess of that required by his contract or of reducing his loss by shortening his period of redemption. The adoption of the latter course did not in any particular prejudice appellant who still held title with the right to make redemption, had he been willing and able so to do. Since no redemption was made the giving of the quitclaim actually benefited appellant in that the consideration received was applied in reducing appellee's loss, and his resultant judgment therefor against appellant.

In view of the circumstances and the understanding of the parties relative to the purpose and effect of the quitclaim deed, and since it transferred only the right of possession which appellee had already lost, it was not a bar to recovery herein. It was given after the contract was at an end due solely to the failure of appellant to perform his obligations.

■ II. Contention is made that appellant should not be charged with the loss sustained by appellee because appellant had an arrangement with the holder of the mortgage to release lot 5 upon part payment. This contention is without merit

since it was litigated and adjudicated adversely to appellant in the foreclosure suit. Moreover, appellee was not a party to any such dealings and had knowledge thereof only from the recitations of the contract in suit herein.

In the contract appellant bound himself to secure the release of lot 5 from the mortgage upon the payment of $2,250. By August 5, 1931, appellee had paid more than that amount, and, at that time, was entitled to have lot 5 released from the mortgage. Appellant failed to procure such release and by reason thereof the property was ultimately lost. Although such failure may not have constituted constructive fraud upon appellee, it resulted in the unjust enrichment of appellant at his expense.

Appellant argues that time was not of the essence of this part of the contract and his failure to perform was not a default. Had the mortgage been less than the balance owing upon the contract there would have been force in this contention. In cases where the balance owed upon the contract exceeds the amount of the mortgage, the purchaser is amply protected and may not always rescind or cease performance because of delay in releasing the property from the mortgage lien. Fitchner v. Walling, 225 Iowa 8, 279 N. W. 417; Cullumber v. Stahl, 200 Iowa 104, 203 N. W. 270. These decisions were based upon broad principles of equity and took into consideration the good faith of the vendors, their willingness to perform their obligations and their ability so to do from the proceeds of the sale. However, in the case at bar, the mortgage exceeded the balance owing upon the contract. Therefore, appellee had no such protection as did the vendees in the cited cases. Furthermore, the record here shows that appellant failed to apply any considerable portion of appellee's payments toward the extinguishment of said mortgage. On the whole the record indicates an entire lack of good faith on the part of appellant in taking care of the mortgage. Conversely, whether or not he may have been legally obliged so to do, appellee did thereafter make his payments and continued to pay until appellant suggested he cease so doing. We doubt the seriousness of appellant's contention that appellee was legally required to continue payments after appellee had virtually abandoned the property to the mortgage.

In addition to the contention that appellee did not continue paying long enough it is argued that he continued pay-

ments too long and thereby waived any default of appellant in, failing to secure the release of the mortgage. It is a sufficient answer that such conduct was induced by appellant's repeated assurances and promises to perform his obligations. Moreover, even though no such representations had been made, appellee was not bound to require timely performance by appellant. We are not prepared to subscribe to a doctrine that the forbearance and good faith performance by appellee forever excused appellant from carrying out his obligations.

III. The argument that appellee failed to rescind within a reasonable time is equally untenable. What constitutes unreasonable delay rests upon the circumstances of the particular case. As above noted, the delay in this case was largely induced by appellant's promises and representations. Strothers v. Leigh, 151 Iowa 214, 130 N. W. 1019.

IV. Nor was appellee required to tender performance before instituting suit. Appellant had put it out of his power to perform by permitting the foreclosure of the mortgage. Under such conditions tender would be of no avail and was unnecessary. Wilhelm v. Fimple, 31 Iowa 131, 7 Am. Rep. 117; Nelson v. Chingren, 132 Iowa 383, 106 N. W. 936; Aurand v. Perry Town Lot & Imp. Co., 178 Iowa 262, 159 N. W. 779; Dolliver v. Elmer, 220 Iowa 348, 260 N. W. 85; Benedict v. Nielsen, 204 Iowa 1373, 215 N. W. 658.

The record supports the finding of the court that at no time was appellee delinquent on payments or other conditions on his part to be performed, and that it would be unconscionable, unjust and inequitable to permit appellant to retain the money paid him by appellee.

An affirmance of the decree and judgment follows.—Affirmed.

MITCHELL, C. J., and HAMILTON, MILLER, HALE, BLISS, SAGER, and RICHARDS, JJ., concur.

STIGER, J., takes no part.