GERTRYAL C. SPANGLER et al., Appellees, v. HAROLD MISNER, Appellant.

No. 47011.

JUNE 17, 1947.

Hall & Ewalt, of Indianola, for appellant.

J. O. Watson, Jr. and M. C. Herrick, both of Indianola, for appellees.

MANTZ, J.—The action is one of forcible entry and detainer. Therein the plaintiffs, claiming to be the owners of certain real estate in Warren County, Iowa, seek to secure possession thereof from the defendant in possession. The defendant, as the surviving joint tenant, vendee, by virtue of a certain contract of purchase entered into in 1941, claims the right to possession of said real estate. Plaintiffs claim that the defendant failed to perform said contract and that they gave due notice of forfeiture thereof in 1946, and followed this with a notice to quit. The defendant admitted the charged default and alleged that one of the owners in interest of the real estate is deceased; that no estate has been opened for her,

and that the other parties to such contract are not in a position to perform by the giving of the conveyance required by the contract.

The trial court granted plaintiffs the relief prayed for and ordered defendant ousted from the premises. Defendant appealed.

We will briefly summarize so much of the record as is necessary to a correct understanding of the issues involved:

On April 24, 1941, Bessie Callison, a widow, and her daughter, Mary Callison, a single person, were owners in fee of a certain tract of land in Warren County, Iowa. Their shares were an undivided one third and two thirds, respectively. On that date said owners entered into a contract to sell said real estate to Harold Misner and Bennetta Misner, husband and wife, the latter being a daughter of the said Bessie Callison. The contract provided that the vendees were to be joint tenants and not tenants in common. The agreed purchase price was $13,100 and payments were to be made as follows: $1,350 cash and the balance of $11,750 by vendees assuming and agreeing to pay a $5,800 mortgage on said premises; $200 March 1, 1942, and $200 on the first day of each year thereafter until the balance was paid in full. The contract gave vendees an option to pay the balance at any time before the same became due. Also, said vendees were to pay the installments and interest on said mortgage and four and one-half per cent interest per annum on the balance due, same to be paid annually. They were also to pay the taxes and keep the buildings insured.

The contract contained the following provisions:

"And it is expressly agreed by and between the parties hereto that the time and times of payment of said sums of money, interest and taxes as aforesaid is the essence and important part of the contract; and that if any default is made in any of the payments or agreements above mentioned, to be performed by the party of the second part in consideration of the damage, injury and expense thereby resulting, or that may be incurred by or to the party of the first part thereby, the party of the second part shall have no claim in law or equity

against the party of the first part, nor to the above mentioned real estate, nor any part thereof; and any claim, or interest, or right, the party of the second part may have had hereunder up to that time by reason hereof, or of any payments and improvements made hereunder, shall, on any such default cease and determine and become forfeited, without any declaration of forfeiture, re-entry, or any act of the party of the first part. And if the party of the second part, or any other person or persons, shall be in the possession of said real estate, or any part thereof, he or they will peacefully remove therefrom, or in default thereof, he or they may be treated as tenants holding over unlawfully after the expiration of a lease, and may be ousted and removed as such. But if such sums of money, interest and taxes are paid as aforesaid, promptly at the time aforesaid, the party of the first part will, on receiving said money and interest, execute and deliver, at his own cost and expense, a warranty deed of said premises as above agreed and the abstract of title continued up to this date."

The purchasers went into possession of said real estate. Bennetta Misner died in January 1943. Her husband, Harold Misner, surviving joint tenant under the contract, remained in possession and continued in possession at all times thereafter. Gertryal C. Spangler, plaintiff-appellee, is successor in interest to Bessie Callison.

On June 5, 1946, the vendors in interest of the real estate contract caused a notice of forfeiture to be served upon Harold Misner, advising him of the particulars of default in the contract claimed by such vendees. Such notice specifically set out and enumerated certain terms and conditions of the contract which vendees had not complied with. The items are as follows:

1. Payment of the $1,350 when due when the contract was executed (April 24, 1941).
2. Payment of $200 due March 1, 1942.
3. Payment of $200 due March 1, 1943.
4. Payment of $200 due March 1, 1944.
5. Payment of $200 due March 1, 1945.
6. Payment of $200 due March 1, 1946.

7. Payment of interest at the rate of four and one-half per cent per annum payable annually on April 24th of each year, commencing April 24, 1942, on $7,300, and payment of four and one-half per cent interest on all unpaid installments and installments due thereafter until date of notice.

8. Payment of first half of real estate taxes of 1945 in the sum of $135.33, and interest.

9. Payment of installment due on $5,800 loan assumed, in the amount of $150, due March 1, 1946.

10. Payment of installment of interest on said loan due March 1, 1945, in the sum of $120.38, and interest thereon in the sum of $2.78.

Said notice provided that unless said vendee complied with the contract within thirty days same would be forfeited. After the expiration of the thirty days, and on July 22, 1946, a notice to quit was served upon Harold Misner, the purchaser in possession of the real estate involved, and following his refusal to yield possession thereof this action was started.

In the petition appellees alleged that the purchasers under the contract had defaulted and had failed and refused to carry out their obligations therein; also alleged the giving of the notice of forfeiture and the following of this with a notice to quit. Harold Misner, appellant, admitted his default as set forth in appellees' petition, admitted his possession under the contract and his refusal to vacate the premises following notice of forfeiture and notice to quit. He specifically denied that the appellees had fee simple title to the real estate involved at the date of the service of the notice of forfeiture and that to quit; denied that the appellees are now the fee simple owners of the premises, and .further denied that appellees are now or have been at any time able to carry out their part of the terms of the contract of April 24, 1941. Appellant, in effect, denies the right of appellees to maintain the action, prays that their petition be dismissed, that the notice of forfeiture be canceled and the notice to quit held to be of no force and effect, and for general equitable relief.

The record shows that Mary Callison, owner of an undivided one-third interest in the real estate involved, died on January

1, 1946, a resident of the state of Illinois, leaving surviving her a spouse, Stanley Jugusczak, and no natural or adopted children, and with no property save her interest in the contract of sale involved herein; that no estate has been opened for her. The record shows that Mary Callison and Stanley Jugusczak were married some time after the contract was entered into in 1941. The record shows that the value of her interest in the land involved was not in excess of $4,000.

Summed up, the defense of the appellant, Harold Misner, is that, as no estate has been opened for Mary Callison Jugusczak, the appellees are not in a position to make to appellant a warranty deed to said real estate; that the failure to administer upon the estate of Mary Callison Jugusczak constitutes a cloud upon the title to her share of said property in that creditors could resort to the same to satisfy their claims; that in the absence of a showing that there are no unpaid claims against her estate her husband would be prevented from conveying her interest in the manner called for in the contract.

It is evident from the record that Bennetta Misner and Harold Misner have not performed their obligations as set forth in their contract. The surviving joint tenant admits such failure. When such default was made the grantor, Mary Callison, as well as Bennetta Misner, a vendee, were both living. The notice of forfeiture could have been served at any time after the contract was signed on April 24, 1941. The fact that the said notice of forfeiture was not served until more than five years thereafter certainly did not work hardship or prejudice upon the appellant. During all of this time the contract-vendees had possession of the real estate and secured the income thereof and did nothing by way of performing their contract obligations.

Appellant argues various grounds to sustain his claim that the court erred in granting appellees' petition. The principal grounds argued relate to the claim that appellees' title was defective and that it would be unfair and inequitable to allow the forfeiture to stand.

I. Under the terms of the contract of April 24, 1941,

the vendees, Harold Misner and Bennetta Misner, were required to make their down payment of $1,350 and assume the $5,800 mortgage and then pay the balance at the rate of $200 per year. Thus they had the right to carry on for a period of at least thirty years to pay such balance. On the other hand, they had an option to pay such balance at any time. They could not demand the deed until they had complied with the terms of the contract. On the other hand, the vendors of the contract had no options; they were required to take the money as paid in—they could not accelerate the contract nor terminate it in the event vendees fulfilled their obligations thereunder.

Up until January 1, 1946, when Mary Callison Jugusczak died, the vendors could have made out a warranty deed in the event vendees had paid out on the contract. Yet every day of this time, right from the inception of the contract, vendees were in default, and continued in default down to the date of the decree of the court.

If it be assumed that the failure of appellees to probate the estate of Mary Jugusczak would impair their title, still, under our holdings, this would be a defect which could be removed and appellant cannot, prior to the time when the contract is to be completed, complain that the title of appellees is defective.

In the case of Fitchner v. Walling, 225 Iowa 8, 279 N. W. 417, this court stated that it was the general rule in the United States that a vendor may perfect his title at any time before the period fixed for the completion of the contract. 55 Am. Jur., Vendor and Purchaser, section 277 et seq. In section 278 of said volume it is stated that a vendee is generally denied the right, before the time set for conveyance, to complain that vendor's title was defective, where the vendee was in possession and where the vendee had an option to pay at any time. In the Fitchner case there is an extended analysis of some of the decisions of this court dealing with the right of the vendee to resist an action to secure possession brought by the vendor when vendee is in default. In the case of Nelson v. Chingren, 132 Iowa 383, 387, 106 N. W. 936, 938, this court said:

"It was not material, of course, that they [vendors] did

not have title at the time of the contract. The necessity for title arose and became absolute when the time came for making conveyance.''

See, also, Larson v. Thomas, 51 S. D. 564, 215 N. W. 927, 57 A. L. R. 1246, annotation 1550, 1551.

II. In effect, the claim of appellant is that appellees' action amounts to a rescission of the contract. He argues that appellees should have foreclosed the contract and argues that it is inequitable to forfeit the contract; that due to an increase in land value appellees will realize a profit by securing the land.

The action is in equity. In argument appellant contends that the appellees should have proceeded by an action to foreclose the contract and proceed as under a foreclosure. He contends that to permit the forfeiture and cancellation of the contract would be unfair and inequitable inasmuch as the real estate has enhanced in value since the contract was entered into. Summed up, his argument, as applied to this phase of the subject, is that a forfeiture is unconscionable and for that reason should be disregarded by a court of equity. Such argument does not strike us as being tenable. Following the notice of forfeiture appellant had thirty days in which to comply by performing the default then existing. We find nothing in the record to excuse such failure. For more than five years both vendors were living and at any time during that period were in a position to convey according to the contract. Such a situation has slight appeal to a court of equity. Moore v. Elliott, 213 Iowa 374, 239 N. W. 32. See, also, Westerman v. Raid, 203 Iowa 1270, 212 N. W. 134; Fitchner v. Walling, supra. We call attention to the language of the court in the last-cited case, where the court said, at page 12 of 225 Iowa, page 419 of 279 N. W.:

''Appellees have had the use and occupation of the real estate in question for two years or more without the payment of any interest due under the contract and required thereby. It would be inequitable to permit them to rescind the entire contract when they have failed to perform or offer to perform their obligations thereunder. The performance of at least this

part of the contract is required by them under the well-known equitable maxim that, 'He who seeks equity must do equity.' Dow v. McVey, 174 Iowa 553, 156 N. W. 706; Fowler v. Dieleman, 192 Iowa 563, 185 N. W. 79; Perfection Tire & Rubber Co. v. Kellogg-Mackay Equipment Co., 194 Iowa 523, 187 N. W. 32; Witmer v. Polk County et al., 222 Iowa 1075, 270 N. W. 323.''

Where the parties are under no disabilities and choose to contract for a forfeiture, a court of equity cannot relieve against a forfeiture in the absence of fraud or improper practice on the part of the one seeking to enforce it. 19 Am. Jur., Equity, sections 75–78, 85; Johnson v. Feskens, 146 Or. 657, 31 P. 2d 667, 107 A. L. R. 340; II Warvelle on Vendors, Second Ed., 950, section 807.

As to the right of a vendor to declare a forfeiture of a contract because of failure of the vendee thereof to comply with the terms thereof, see Janes v. Towne, 201 Iowa 690, 207 N. W. 790.

We do not think appellees were obligated to perfect their title at that time, even if it be assumed that it was defective. The appellant does not contend that appellees are in a position where it would be or is impossible for them to perform their part of the contract when required to do so. Nothing of that kind appears in the record here. Apparently appellees could readily perfect their title. It is true that this court has held that a vendee need not go ahead with his obligations under a contract where it is shown that it is impossible for the other party to perform. See Wilhelm v. Fimple, 31 Iowa 131, 7 Am. Rep. 117; Martin v. Roberts, 127 Iowa 218, 102 N. W. 1126; Nielson v. Benedict, 196 Iowa 173, 194 N. W. 83; Dolliver v. Elmer, 220 Iowa 348, 260 N. W. 85. These cases are clearly distinguishable from the case at bar. In the case of Armstrong v. Breen, 101 Iowa 9, 69 N. W. 1125, the matter of a contention similar to the one which appellant makes in the case at bar was passed upon and the court stated that, even if the party agreeing to convey had no title at the time of the contract, it would suffice if he was able to convey title when called for under the contract.

III. It will be noted that, under the terms of the contract of purchase, one of the terms agreed upon was that in the event appellant defaulted in his obligations he was to be treated as a tenant holding over unlawfully after the expiration of a lease and could be ousted and removed as such. Appellees' petition in effect is based upon the theory that appellant is holding over unlawfully.

As the record shows without dispute the default of appellant from the inception of the contract, and with appellant admitting such default, we think that he comes within the provisions of that part of the contract above quoted. In the case of Putnam v. McClain, 198 Iowa 287, 289, 199 N. W. 261, 262, the essential facts are quite similar to those of the case at bar. A vendor of a real estate contract declared a forfeiture of the contract and thereafter brought action by forcible entry and detainer. This court held that the action of forcible entry and detainer would lie and that as between vendor and vendee the relation of the latter to the former was that of a quasi tenant. We quote:

"In such a case, in determining the rights and liabilities of the parties, principles applicable to the relation of landlord and tenant have been applied. Thus the doctrine that a tenant is estopped to deny his landlord's title has been applied to a vendee who enters under his contract to purchase."

The holding in the Putnam case was followed by this court in Cassiday v. Adamson, 208 Iowa 417, 224 N. W. 508; Music v. DeLong, 209 Iowa 1068, 229 N. W. 673.

The matter of the rights and liabilities as between a vendor and a vendee was discussed in the case of Fowler v. Dieleman, 192 Iowa 563, 568, 185 N. W. 79, 81. There the action was that of forcible entry and detainer where it was claimed there had been a default on the part of the vendee. The contract in that case contained no express provision giving vendor the right to proceed by forcible entry and detainer nor did it contain any language by which such right would be implied. The court held that such action under the contract

could not be maintained. It held that as vendee went into possession peacefully a mere default in payments did not make the possession unlawful nor entitle vendor to remove him therefrom. We quote:

"* * * and, in this state at least, even where the contract expressly provides for forfeiture and re-entry, upon failure to make payments, this provision cannot be enforced without the service of 30 days' written notice upon the vendee. Code Sections 4299, 4300. This provision of the statute is not satisfied by a 30-day notice to quit the possession. The notice contemplated by the statute is a notice by the vendor of his purpose to declare a forfeiture. To maintain forcible entry and detainer, he must show either an accomplished rescission or cancellation of his contract to sell, or a rescission by mutual agreement, and that defendant is wrongfully holding over after his right to possession has been so eliminated."

In the instant case the contract contains an express grant of a right to forfeit the contract. That right was exercised as per notice given in which appellant was given thirty days within which to comply and remedy his default. Appellees complied strictly with the terms of their contract. See, also, Music v. DeLong, supra; Cassiday v. Adamson, supra; Fitchner v. Walling, supra. We call attention to the language of the court in the last-cited case, where it was held that where a party to a contract was himself in default he was not in a position 'to question the title of the grantor.

Appellant argues that the appellees cannot prevail, claiming that they are not in a position to make a conveyance such as is called for in the contract of 1941. Considerable reliance is placed by appellant on the case of Sarazin v. Kunz, 226 Iowa 1309, 286 N. W. 471. We think that case has no application to the record in this case and is clearly distinguishable therefrom. There is nothing in the present record to show that appellees will not be able to perform when under the contract they will be required to do so. In the Sarazin case the property conveyed by the contract had been levied upon and sold and the period of redemption had expired. Manifestly it was im-

possible for the vendor to have completed his contract by making a proper conveyance. In addition, it was claimed that the balance remaining had been paid before the time fixed to forfeit the contract. A vendee in default cannot complain that a vendor is not able to furnish title. Dimon v. Wright, 206 Iowa 693, 214 N. W. 673. The above holding was later approved in the case of Lake v. Bernstein, 215 Iowa 777, 780, 246 N. W. 790, 792, 102 A. L. R. 846. Therein the court quoted with approval, from Dimon v. Wright, the following:

" 'A court of equity will not permit a person to profit by his own breach of contract and to benefit by his own wrong.' "

Here we have appellant asking that this court approve his default and at the same time permit him to have the income of the property for more than six years. See, also, Westerman v. Raid, supra; Downey v. Riggs, 102 Iowa 88, 70 N. W. 1091. Appellant at no time complained about the title of appellees or attempted to rescind the contract because of such claim. Vendees were in possession at all times after the contract was entered into. Because of it they went into undisputed possession and are not in a position to refuse payment of the purchase price for the alleged lack of title without rescinding the contract and restoring possession of the real estate to the vendor. Allen v. Adams, 162 Iowa 300, 143 N. W. 1092, and cases cited on page 308 thereof; Martin v. Work, 201 Iowa 444, 206 N. W. 288; Creel v. Hammans, 234 Iowa 532, 539, 13 N. W. 2d 305, 309. We call attention to the holding of this court in the last-cited case. Suit was brought to foreclose a contract to purchase real estate where the defense was that vendor's title had failed. On that question this court, Garfield, J., used the following language:

"It is well settled that a purchaser who takes and retains possession under the contract cannot refuse to pay the purchase price because of alleged lack of title in the vendor unless he rescinds and restores possession. Where a purchaser who learns of defects in his vendor's title does not rescind he can retain possession under the contract only upon condition that he pays

the purchase price. If he does not elect to rescind, it is considered that he is willing to receive such title as the vendor is able to give, content with the personal responsibility of the vendor upon his covenants in case the title fails and he is dispossessed." (Citing cases.)

Under the record here the title of appellees was at the very most nothing more than defective.

Appellant argues at considerable length that under the law forfeitures are to be strictly construed. We have so held in many cases. But in this case vendors and vendees specifically agreed that unless vendees performed certain specific obligations a forfeiture was permissible. The law likewise permits such procedure. Appellant defaulted for something over five years. He had ample time to remedy his default even after notice given pursuant to the contract. We can see no relief for him in this action. According to the decree of the trial court appellant simply loses possession of the land. He goes his way with the rents and profits from a 108-acre farm, and in return paid a mere pittance, taxes, and part interest on a loan. To grant his asking, in our opinion, would be highly inequitable. The case is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, HALE, MULRONEY, SMITH, and HAYS, JJ., concur.