ANNA ARMSTRONG, Appellant, v. T. F. BREEN.

**Rescission:** DELAY IN DELIVERY. One cannot rescind a contract for purchase of land, merely because the vendor was unable, owing to refusal of a tenant to vacate, to deliver possession till seven or eight days after the time stipulated, such delay being unimportant, because the roads were so bad that the purchaser could not have moved in, at all events, and used, merely as an excuse in aid of a desire to rescind.

DEFECTIVE TITLE: *Perfected in time.* That the vendor of land has no title at the time of making the contract of sale, is not ground for rescission, where he is able to make perfect title by the time required by such contract.

DECEIT. A false representation by the vendor of land, that it is not what is known as "river land," is not ground for a rescission of the contract, where an uncertainty at that time existing as to the title to river land has been cleared up, and such lands have thus become as valuable as other lands.

*Examination.* A false representation by a vendor of land as to the amount cut off by a railroad right of way through the land, is not ground for rescission, where the purchaser's agent examined the land before the purchase.

*Appeal from Webster District Court.*—HON. B. P. BIRD-SALL, Judge.

THURSDAY, JANUARY 28, 1897.

ACTION in equity to rescind a contract in writing for the sale of certain lands, because of alleged frauds and false representations, and to recover seven hundred and fifty dollars, with interest paid on the purchase price, and damages for failure of the defendant to give possession of the said land as agreed upon. Decree was entered dismissing plaintiff's petition, and

a judgment rendered against her for costs, from which she appeals.—*Affirmed.*

*D. C. Chase* for appellant.

*R. M. Wright* for appellee.

GIVEN, J.—I.  Plaintiff is the wife of Robert Armstrong, who acted for her in the transaction under consideration.  One W. G. Bonner, doing business as a real estate agent at Webster City, had acted for plaintiff in the sale of a farm, and had in his hands seven hundred and fifty dollars, received for her as a cash payment thereon.  Through him the defendant and Robert Armstrong were brought together at Webster City to negotiate a purchase and sale of the land in question, which is situated near Duncombe, in Webster county.  On the sixteenth day of November, 1893, Armstrong, Breen, and Bonner drove to the land for the purpose of showing it to Armstrong, and on their return to Webster City the contract in writing was entered into whereby Breen agreed to sell to Mrs. Armstrong, all his right, title, and interest in the northwest one-fourth, section 15, township 88 north, of range 27 west of the fifth P. M., "subject to all the established highways, and all railroad rights of way, —possession to be given to said second party March 1, 1894,—for the sum of four thousand nine hundred and sixty dollars, payable as hereinafter mentioned."  The contract provides for the payment of seven hundred and fifty dollars down, and the balance in four annual payments, according to four notes of the plaintiff.  It also provides that plaintiff shall pay all taxes, including the tax for 1893.  This contract was executed by T. F. Breen, Anna Armstrong, and Robert M. Armstrong, and the seven hundred and fifty dollars paid thereon, six hundred dollars of which was paid to

defendant, Bonner retaining the balance as his commission. One Townsend was in possession of the land as tenant under Breen, and refused to quit possession on or before the first of March, 1894, whereupon Breen instituted proceedings to oust him, but did not succeed in procuring possession, so as to be able to give the same to plaintiff, until the eighth of March, 1894. With this general statement of the facts, we will proceed to consider the allegations of fraud and misrepresentations relied upon.

II. The first representation alleged is that the defendant and Bonner represented that the land was not what is known as "river land," and this representation seems to have been made by Mr. Bonner. The evidence shows that, prior to 1893, owing to the uncertainty of the title to what is known as "river land," such lands were not as valuable as other lands; but it appears that, the title to river land having been settled in the courts, they were regarded as of equal value with other lands at the time of this transaction, and that this particular tract of land was worth from thirty to thirty-five dollars per acre, while the price agreed to be paid was thirty-one dollars per acre. We think the plaintiff was not prejudiced by this representation. It is next charged that it was falsely represented that there were one hundred and sixty acres, which seems to be true, less that taken for highways and a railroad right of way, subject to which the plaintiff made the purchase. It is also charged that the land was represented to be of good quality, and worth the price agreed to be paid. Mr. Armstrong, on behalf of his wife, went to the land to examine it, and had ample opportunity to know its quality, and the evidence shows that it was fully worth the price agreed to be paid. In an amendment to her petition, the plaintiff alleges that Bonner claimed to be acting for and was trusted by her,

when, in fact, he was acting for the defendant. In her original petition she alleges that she relied upon the representations of the defendant and his agent, Bonner. Taking these allegations together, they show that the plaintiff knew that Bonner was acting for both parties. Plaintiff alleges that, at the time the three men went to look at the land, the defendant treated her husband to intoxicating liquors, and, while he was under the influence of the liquors, pretended to show him the land. It is also insisted that, at the time the three came to plaintiff's house to have her sign the contract, they were all intoxicated, and that she signed it through fear of her husband, because of his intoxicated condition. We do not think the evidence sustains this claim. While it shows that the men did drink some beer at Duncombe before going out to see the land, they took their dinners before going, and were not in the least disqualified from examining the land by reason of intoxication. It is true that they did not go over the land, but simply along the road, from which most of it could be seen. It does not appear, however, that there was anything done to prevent Mr. Armstrong from making a thorough examination of the land. True, he says that the other men said they had not time; but they deny this statement. We think Mr. Armstrong made all the examination he desired, and was satisfied as to the land. It is alleged that Breen represented that the land was thoroughly tiled, and that he pointed out a large amount of tile, and stated that it went with the land. There is some conflict in the evidence upon this subject,—the fact being that an amount of tile had been hauled onto the land with the view of being placed so as to connect with the drain of large tile theretofore laid upon adjoining land, and for which Breen had paid a part of the price, thus having the right to connect therewith

but there was no tile then laid on this land. We are satisfied that what was said as to the land being tiled, had reference to the tile that was laid on the other land. It is also charged that defendant represented to Robert Armstrong that the railway right of way only took off a small portion of the corner of the land,—something over an acre,—while in fact much more than an acre was cut off by the right of way. If this representation was made, and the quantity of land cut off by the right of way was as great as is claimed, it would be open and obvious to Mr. Armstrong at the time he looked at the land. There is nothing in the circumstances to entitle plaintiff to relief because of representations, the falsity of which Mr. Armstrong could have known at the time he examined the land. We find nothing in the evidence to justify the conclusion that any fraud whatever was perpetrated on the plaintiff in this transaction; but she seems to have, from some cause other than those alleged, become dissatisfied with the contract soon after it was made, and to have set about finding causes for setting it aside. So far as appears, the transaction was fair, open and honest, and that, in so far as the plaintiff may have been disappointed as to the quantity, quality or condition of the land, it was attributable to the neglect of her own agent, her husband, in not more thoroughly examining it. It is claimed that the contract was not read over to the plaintiff before she signed it, at their house; that, in reading it over to Mr. Armstrong, at Bonner's office, that part providing that plaintiff should pay the taxes for 1893, was not read to him. It is probably true that the contract was not read to Mrs. Armstrong. We are satisfied that it was all read to Mr. Armstrong, and that he knew of the agreement as to taxes of 1893, at the time he signed it. He was acting for his wife,

and she signed it on the faith of his knowledge as to the contents of the instrument. We do not think there was any deception in the reading of the contract.

It is contended in argument that Mr. Breen had no title to the land at the time he made the contract. This is not alleged as a ground for rescission; but, if it were, the evidence would fail to sustain it, for it appears that Mr. Breen would have been able to make perfect title by the time required by the contract. It is also said in argument that Mrs. Armstrong was under a species of duress at the time she signed the contract. There is nothing in the evidence to sustain this claim. The only allegation remaining to be noticed is the failure of Breen to give possession to plaintiff on the first day of March, 1894, as provided in the agreement. It is true, that Townsend was then in possession, and refused to yield the possession, claiming the right to remain another year; but Mr. Breen adjusted this matter with Townsend, and on the eighth day of March, 1894, notified plaintiff of that fact, and that she could take possession at any time. Plaintiff declined to do so, not because of the few days' delay in getting possession, but because of her desire to rescind the contract. The evidence shows that from the first to the eighth of March, 1894, and later, the highways in that part of the state were in such condition that it was impossible to move loaded vehicles thereon, and that Townsend could not have moved out, nor the plaintiff have moved in, during those days, in consequence of the bad condition of the roads. Leaving the fact of the condition of the roads out of view, we think that this contract, fairly and honestly entered into, should not be rescinded, and the plaintiff released from her obligations thereunder, merely because of the defendant's inability to give possession prior to the eighth or

ninth of March. There might be circumstances under which such a failure would warrant the cancellation of the contract, but we do not think that the circumstances of this case call for such a result.—AFFIRMED.