ZENO RODER et ux., appellants, v. RALPH DE VRIES et ux., appellees.

No. 48708.

(Reported in 69 N.W.2d 425)

842

April 5, 1955.

Burton E. Parriott, of Remsen, for appellants.

Koopman & Koopman, of Sibley, for appellees.

THOMPSON, J.—On October 9, 1952, the plaintiffs, husband and wife, entered into a written contract to purchase from the defendants, likewise husband and wife, certain real estate in Osceola County. The realty was described in the contract as:

"The East Half of the Southeast Quarter (E½ SE¼) of Section Eight (8), Township Ninety Nine (99), Range Forty One (41), West of the 5th P.M."

The contract provided for payment of $2500 on execution of the contract; an additional $2500 on November 15, 1952; and the remainder of $21,500 on or before March 1, 1953. Of this latter sum $7700 was to be paid by the assumption by the purchasers (plaintiffs) of an existing mortgage. The contract made no other reference to encumbrances. By its terms, defendants were to execute and deliver a warranty deed to said premises, with abstract of title, when plaintiffs had made payment as stipulated.

The contract also contained this clause: "And the party of the first part shall also annually pay all taxes and assessments that may accrue on said property as they become due or before they become delinquent, and including the tax [sic] 1952 taxes due and payable for the year Jan. 1, 1953."

The first two payments of $2500 each were made as specified; but when the time for the final payment arrived on March 1, 1953, plaintiffs refused to further perform, alleging failure of defendants to furnish abstract of title showing freedom from encumbrances and failure to perform in other respects. These claimed failures and encumbrances, upon which the plaintiffs' action for rescission of the contract was based, are these: (1) It is alleged a railroad right of way crosses the farm, it is an encumbrance, and the contract does not except it; (2) the same claim is made as to a public highway running along one side of the tract; and (3) the quoted portion of the contract above set forth is relied upon as being an agreement by the defendants to pay all accruing taxes on the land apparently in perpetuity, which it is alleged they were unwilling to do. The defendants having prayed reformation of the contract, upon trial the court ordered that immediately following the description of the real estate there be added the words: "Excepting railway right of way and existing public highways."; and further that the provision concerning taxes be amended to read: "First parties shall pay 1952 taxes due in 1953, and all prior taxes and assessments." As thus reformed, the court ordered enforcement of the contract, including its forfeiture provisions, but gave plaintiffs thirty days from the filing of the decree to complete their payments.

I. The contract might have been much more skillfully

drawn. The parties, apparently by agreement, went to the office of an individual described as being in the abstract, insurance and real-estate business, in Sibley; and at their request he drew the contract. This attempt to economize in time, or money, or both, met with the fate which so often overtakes the efforts of those who disdain the services of lawyers trained in the preparation of important papers and giving skilled advice. The contract which was prepared here, as the trial court found, did not express the true agreement of the parties, and has led to prolonged and costly litigation.

██  II.  It is elementary that a written contract may be reformed by the courts only when there is a showing of fraud, duress or mutual mistake. City of Des Moines v. City of West Des Moines, 244 Iowa 310, 56 N.W.2d 904; In re Estate of Murdoch, 238 Iowa 898, 29 N.W.2d 177.

██  It is equally well settled that the evidence to justify a reformation, to show a mutual mistake so that the contract does not express the true agreement of the parties, must be clear, satisfactory and convincing. Haugh v. Lanz, 187 Iowa 841, 845, 172 N.W. 199, 200.

But we think the record in this case meets these somewhat strict requirements for reformation. The rules of law are not in serious dispute; we must look to the facts for a proper determination of the issues. The testimony of the plaintiff Zeno Roder leaves little doubt as to what the parties had in mind when they executed the written contract. The plaintiffs had inspected the farm shortly before they entered into the purchase agreement. They were taken to see it by Will Brower, a real-estate agent with whom defendants had listed the farm for sale. Defendants lived across the road from the land in controversy. Zeno Roder says:

"We looked the farm over and then went across the road to see Mr. De Vries. * * * I also inquired about the railroad right of way. *I knew that was taking a little bit off.* I knew about the railway right of way before I signed the purchase contract. * * * That at the time of the signing of the contract I had no idea De Vries was going to pay the taxes from then on. I was fully

informed as to the highway surrounding the farm before signing the contract. * * *

"I understood the part about the railway going through this particular farm and the highways approaching the farm." (Italics supplied.)

Will Brower, the realtor who showed the farm to the plaintiffs, testified there was a discussion as to taxes: "Mr. De Vries was to pay the 1952 taxes and Mr. Roder the 1953. * * * The shortage resulting from the railroad on this eighty was called to Mr. Roder's attention prior to the signing of the contract."

The defendant De Vries told the court: "Mr. Roder said this isn't an eighty and I said that this ground all goes off, this railroad and so forth. I referred to the railroad cutting the corner of the eighty and the road as we were driving to the farm."

O. J. Ditto, who drew the disputed contract, testified: "I asked them if they had made any agreement about taxes. They told me that Mr. De Vries was to pay the 1952 taxes due and payable Jan. 1, 1953 and that Mr. Roder would pay the subsequent taxes."

█ █ It is clear from the foregoing, which includes Zeno Roder's own testimony, that he knew the railroad right of way diminished the eighty acres, and that he expected to purchase the eighty so diminished. It is true the fact a prospective purchaser knows of an encumbrance does not preclude him from contracting for a title clear of the encumbrance. But here Mr. Roder says: "I knew that was taking a little bit off." The encumbrance was not of a kind that could be readily removed, and he knew the farm he inspected and wished to purchase had "a little bit off." It is apparent the parties were dealing for the eighty as it was, slightly diminished by the right of way, and the failure to except it in the description in the written contract was a mutual mistake.

█ Much the same may be said as to the highway. In addition, we have held a public highway is generally not an encumbrance. Dierksen v. Pahl, 194 Iowa 713, 720, 190 N.W. 423, 426; Harrison v. Des Moines & Fort Dodge Ry. Co., 91 Iowa 114, 58 N.W. 1081; and see 64 A. L. R. 1479, 1482.

The contention that the defendants-vendors were to continue

perpetually to pay taxes after the transfer of the farm and delivery of possession to the plaintiffs merits slight consideration. The language of the contract was unfortunate in this respect; but Zeno Roder says frankly he did not expect De Vries was going to pay the taxes from then on; and Mr. Ditto testifies as to his instructions from the parties.

III. Some doubt perforce arises in the mind of a court of equity as to the sincerity of the plaintiffs' motives in refusing to complete their purchase on March 1, 1953. Mr. Roder's testimony makes it clear he knew of the right of way, the highway and the true agreement as to taxes. In view of his own testimony and the highly technical nature of his objections, his further statement that "I inquired about value and then I realized the place was oversold by at least $100 an acre" becomes significant.

IV. Mrs. Roder, while a nominal party to the contract, apparently paid almost no attention to the transaction. She says she "really wasn't paying much attention to it at all." She did not take part in the discussion at all; had no idea as to price, whether there was any talk about railway or highway shortages or taxes. In fact, her name was put in the contract only at the instance of one of the real-estate men. It is evident she relied wholly upon her husband, and that he was her fully authorized agent in the transaction.

V. Some stress is put upon evidence which plaintiffs think tends to show that he was overreached by his supposed agent, who it is claimed was in fact in league with defendants' agent and shared in the latter's commission. There was also evidence introduced to show some interludes of mental incompetency on the part of Zeno Roder. Since no fraud or lack of mental capacity was pleaded, we give these matters no further attention.

VI. Plaintiffs' final contention is that defendants at the time of the trial had incapacitated themselves from delivering possession, had in fact acquiesced in rescission, by leasing the buildings on the property to third parties. When litigation developed early in 1953, the parties entered into a stipulation which provided that the defendant Ralph De Vries should operate the farm land to March 1, 1954, paying a stipulated rental to Harold R. Koopman as conservator. It was also stipulated

that the said Koopman as conservator should forthwith lease the house on the premises to a third party at not less than $35 per month. No time limit for the leasing of the house was set, unless it be found in Paragraph 4 of the stipulation, which provides:

"It is further understood and agreed by the parties hereto that the arrangement of tenancy and farming herein provided for shall be without prejudice of any kind to any of the parties involved in said action and that the question of occupancy or tenancy of said premises from and after March 1, 1953 to March 1, 1954 shall not be raised as an issue between the parties in the litigation involved."

On April 8, 1954, the date of the commencement of the trial, plaintiffs discovered that Mr. and Mrs. R. H. Dykstra were in possession of the house as tenants. The record indicates this was under an arrangement with the conservator, Koopman. Ralph De Vries denies that he had any part in making the lease arrangement. It seems to have been a continuation of the tenancy under the stipulation above referred to. The conservator was seemingly of the opinion his right and duty to lease the house did not end with March 1, 1954, and the language of the stipulation furnishes some support for this position. We need not decide whether it was sound or otherwise. The lease with the Dykstras was oral, and Mrs. Dykstra testified they would give possession within 24 hours after demand.

It was not the defendants who had placed the Dykstras in possession; the plaintiffs did not desire possession but were resisting enforcement of their contract; and possession could be had if desired in one day. Under these circumstances we find Fulton v. Chase, 240 Iowa 771, 37 N.W.2d 920, in which the vendor had placed the legal title to the disputed premises out of his control by conveying to a third party; Kilpatrick v. Smith, 236 Iowa 584, 19 N.W.2d 699, in which the vendors attempting to enforce forfeiture had before the expiration of the 30-day forfeiture period leased the property for considerably more than one year, and other cases relied upon by plaintiffs, factually not in point.

848

Much closer to the present situation is Armstrong v. Breen, 101 Iowa 9, 14, 15, 69 N.W. 1125, 1127. There, because a tenant refused to give possession on March 1, the vendor was unable to deliver until March 8. We said: "* * * we think that this contract, fairly and honestly entered into, should not be rescinded, and the plaintiff released from her obligations thereunder, merely because of the defendant's inability to give possession prior to the eighth or ninth of March. There might be circumstances under which such a failure would warrant the cancellation of the contract, but we do not think that the circumstances of this case call for such a result."

It is evident the plaintiffs did not desire possession but are seeking a technical excuse for failure to perform their contract. The conservator apparently felt it would be for the best interest of all that the property be put to some use, that some income be derived from it. Whether he was acting within his legal authority is immaterial. He was the conservator agreed upon by all parties. His acts were no more chargeable to the defendants than to the plaintiffs.

We find the judgment and decree of the trial court in all respects well founded. The plaintiffs will have thirty days from the date of filing this opinion to perform their contract as reformed; otherwise a supplemental decree declaring their rights to be forfeited will be entered in the trial court.—Affirmed.

All Justices concur.