Harold **HANSEN** and Judy Hansen, Appellants,

v.

Stanley Raymond **CHAPIN** and Dorothy J. Chapin, husband and wife, Appellees.

No. 56979.

Supreme Court of Iowa.

Aug. 29, 1975.

J. R. Sokol of Sokol & Sokol, Maquoketa, and Donald G. Senneff of Shaff, Farwell & Senneff, Clinton, for appellants.

Howard M. Remley of Remley, Heiserman & Story, Anamosa, for appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and McCORMICK, JJ.

MASON, Justice.

Harold Hansen, as vendee in an installment contract for the sale and purchase of real estate in Jackson County, and his wife Judy brought an action in equity against the vendors, Stanley Raymond Chapin and his wife Dorothy J., seeking specific performance of the contract or, in the alternative, return of all monies paid under the contract and money damages. Plaintiffs appeal from judgment dismissing their petition as amended in its entirety including all claims thereunder and the assessment of costs.

May 1, 1967, Stanley and Dorothy Chapin entered into a "contract for conveyance of real estate" with Harold Hansen, then unmarried, for the sum of $14,000 payable $500 at the time of signing of the contract, $3500 January 2, 1968, and the balance in annual installments of $1000 commencing January 2, 1969, with interest on the unpaid balance at the rate of six and one-half percent per annum.

The contract was recorded June 9, 1967. It contained a forfeiture clause as well as a provision forbidding the purchaser from selling, assigning or renting the real estate without prior *written* consent from the vendors.

Harold Hansen made the $500 required down payment on signing the contract and entered possession of the house and yards. He also made the payment of $3500 due January 2, 1968 and possession of the farmlands and outbuildings was delivered at that time in accordance with the terms of the contract. Hansen made a further partial payment of $500 January 7, 1971.

Meanwhile plaintiff Harold Hansen married Judy July 27, 1967, at which time the couple set up housekeeping on the farm, remaining there until their "eviction" at the end of May 1971.

In an apparent effort to resolve any problems with ownership of the farm should Judy have died (she was previously married), Harold executed a written instrument entitled "Assignment and Conveyance" which assigned his entire interest in the farm to himself and Judy as joint tenants with full right of survivorship and not as tenants in common. This instrument was signed and notarized October 23, 1968, but was never recorded. No written consent of the vendors to this assignment was ever obtained. The testimony is in conflict whether Chapin or his wife had knowledge

of this assignment. Harold testified he informed Mr. Chapin of his intent to so assign to which Chapin voiced no objection. Chapin, on the other hand, admitted knowledge of the Hansen marriage but denied he was ever told about or knew of the unrecorded assignment.

In any event, the Hansens for reasons undisclosed, failed to tender the 1968 or 1969 installments. As a consequence, the Chapins, who had by this time moved to Ohio, caused to be served upon Harold "Notice of Forfeiture of Real Estate Contract" January 21, according to the sheriff's return of service. The notice provided the land sale contract would stand forfeited unless the "parties in default", within 30 days, performed the contract terms and conditions in default together with payment of the reasonable cost of serving the notice.

The notice of forfeiture named only Harold; it did not include Judy. It was Judy, nevertheless, who answered the sheriff's knock at the door and summoned her husband. She also stated she read the notice (as well as all other mail she and her husband received).

The notice prompted the Hansens to inaugurate attempts to achieve outside financing to pay off the amount owed the Chapins. And in that regard they contacted Chapins' attorney, LaVerne Roberg, who at this point was handling the situation between Chapins and Hansens. This meeting occurred sometime in January or February 1971. Harold testified Roberg informed him of the amount of money which would have to be paid to avoid forfeiture. Harold stated the agreement was that $100 was to be paid every 30 days, which amount would be held in escrow. If the Hansens obtained financing, such payments would be applied to the contract. If not, the sums would be forfeited.

Attorney Roberg, however, testified these payments were not related to 30 day intervals. On the contrary, the first $100 payment stopped forfeiture only to the point a Federal Housing Administration loan fell through. The agreement to withhold forfeiture "naturally" stopped when this loan was not obtained. When the F.H.A. loan was not forthcoming, Hansens informed Roberg of their application for a Veterans Administration loan. The above agreement was then brought back to life pending the outcome of that application. Two more $100 payments were likewise made to keep the agreement open.

Defendants' exhibit 13, a letter dated March 17, 1971, to Chapin from Roberg, a copy of which was sent to the Hansens, reads in pertinent part:

"Mr. and Mrs. Hansen will proceed with their application for the VA loan and will make $100.00 payments to this office, the first by Friday, March 19, and the second on or before April 15. They understand that these payments will be applied on their indebtedness to you should they pay the contract in full, and if they are not able to pay the contract balance, these $100.00 payments will be forfeited by them."

By May 3 the VA loan had not as yet been approved, so on that date Roberg wrote the Hansens another $100.00 payment was expected by May 7 if they wished to remain on the premises. The letter suggested the Hansens do what they could to expedite the VA loan. The Hansens paid this amount May 7.

Unfortunately, the VA loan was denied and defendants recorded an "Affidavit in Support of Forfeiture of Real Estate Contract" May 13. On May 17 notice to surrender possession was given plaintiffs, who immediately asserted their right to occupancy for a period of 30 days following the May 7 payment. Defendants agreed to allow the Hansens to remain in possession until June 1.

Meanwhile, the Chapins had entered into negotiations for the resale of the farm to Dennis Dean Appelhans and Kathleen K. Appelhans. Negotiations began May 15 and ended with the signing of a warranty deed May 28. At the approximate same time, the Hansens were able to attain fi-

nancing from Mr. Charles Biddle. In effect, this "loan" was really a purchase of the farm by Biddle.

In relation to the Biddle transaction, Chapin received a telephone call May 16 from Biddle offering more money if the Chapins would "throw over" the then oral agreement with the Appelhanses. Chapin refused. In any event, the Hansens tendered Biddle's cashier's check to the Chapins, who returned it to Roberg. Roberg wrote Hansens' attorney June 8 the Chapins refused this tender because the amount was insufficient. This letter also contained a denial the notice of forfeiture was extended to June 7.

Plaintiffs then filed their petition asking the trial court (1) to hold the forfeiture null and void; (2) to specifically enforce the original land sale contract; or (3) in the alternative, if title were found unmerchantable, to cancel the contract and order the Chapins to return all sums paid with interest and damages in total sum of $9,000. Finally, plaintiff prayed Dennis and Kathleen Appelhans (listed as defendants in the petition) be ordered to quit and terminate possession.

The trial court found: (1) the Chapins had neither actual nor constructive notice of the Hansen assignment, which meant the Chapins' defenses against Harold were good against Judy also; (2) the forfeiture was not invalid because of the failure to name Judy; (3) the three $100.00 payments were not partial payments under the sale contract which would operate as a waiver of the forfeiture; (4) no agreement to delay forfeiture existed beyond May 13, 1971; (5) the tender to the Chapins was in any event insufficient and occurred after plaintiffs' rights in the contract were terminated by forfeiture, and finally (6) plaintiffs were entitled to the return of no moneys paid since their occupancy over the several years was worth more than the sums they paid on the contract.

The trial court had sustained the motion of Appelhanses to dismiss as to them made at the close of plaintiffs' evidence after concluding Appelhanses were good faith purchasers without notice of any claim of plaintiffs.

Plaintiffs' appeal presents the following issues for review: (1) Was the acceptance by vendors of the three $100 payments subsequent to notice of forfeiture equivocal conduct such as to constitute waiver of the right to pursue forfeiture under that particular notice? and (2) Is there support in the evidence for the finding vendors had neither actual nor constructive notice of the assignment creating a joint tenancy, thereby excusing vendors' failure to serve notice of forfeiture upon vendee's wife?

 In an equity matter, such as this, our review is de novo. Rule 334, Rules of Civil Procedure. It is our responsibility to review the whole record and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. *State ex rel. Turner v. Younker Brothers, Inc.*, 210 N.W.2d 550, 567 (Iowa 1973).

 I. The first issue presented for review arises from the trial court's conclusion that "under the foregoing facts, the three (3) $100 payments by Plaintiff Harold Hansen, * * * did not constitute partial payments due under a real estate contract which would operate as a waiver to enforce a forfeiture of the contract for failure to pay the balance due."

Hansens contend that except in cases where the record reveals a clear intent on the part of the vendors to pursue forfeiture, acceptance of partial payments subsequent to service of the notice of forfeiture constitutes a waiver of the right to proceed under that notice. In this connection they maintain acceptance of any payments subsequent to the notice qualifies as conduct

equivocal in nature, inconsistent with a clear intent to pursue a forfeiture.

From this they argue conduct of Chapins was not clearly consistent with an intent to pursue forfeiture; rather it indicates a recognition on the part of the vendor that the contract was still considered to be of force and effect.

In *Bettis v. Bettis*, 228 N.W.2d 193, 195 (Iowa 1975), this court noted there may be conduct on the part of the vendor as to entrap, deceive, or mislead the vendee, or the vendor might waive the right subsequently to enforce the forfeiture, or he might be estopped to insist thereon.

*Wemer v. Long*, 185 N.W.2d 243, 247 (Iowa 1971), recognized that a vendor effecting, or attempting to effect, a forfeiture may waive the same or he may be estopped to enforce it by subsequent conduct inconsistent with his intent to rely upon the forfeiture. The court went on to say:

"However, where a vendee claims waiver of forfeiture by implication from the conduct of acts of the vendor, the vendee must establish by a preponderance of the evidence unequivocal conduct on the part of the vendor, clearly establishing the vendor regards the contract as in full force and effect subsequent to the forfeiture. The question of waiver is ordinarily a question of fact to be determined from all of the facts and circumstances shown by the record in that case."

In our de novo review we have examined exhibits received as evidence in this matter which have been certified to this court. These include letters from Roberg to Hansen covering a period from February 24, 1971 through May 10 regarding Hansen's efforts to secure loans through Federal Housing Administration and Veterans Administration. Among these exhibits there is also a letter from Roberg to Chapin, a copy of which was mailed to and received by Mr. and Mrs. Hansen.

The court finds the foregoing correspondence coupled with the testimony of Roberg and Harold Hansen to be a consistent and strong manifestation by Chapins to Hansen of Chapins' clear intent to pursue forfeiture following service of the notice of forfeiture January 21, 1971, even though Chapins had accepted the three $100 payments referred to after such service in view of the specific and limited purposes for which those payments were accepted. This is the instance referred to in *Babb's, Inc. v. Babb,* 169 N.W.2d 211, 214–215 (Iowa 1969), where the entire record shows an intent to pursue the forfeiture.

The evidence here would not justify a finding Chapins had waived their right to proceed under the notice or that Harold had been entrapped, deceived or misled in any way or in any manner by Chapins' conduct which would estop Chapins to insist on forfeiture.

We determine this issue adversely to plaintiffs' contentions. Plaintiffs failed to carry their burden of proof.

■ II. The second issue presented for review which is set out earlier stems from the vendors' failure to serve notice of forfeiture on Harold's wife, Judy Hansen.

It is true the notice of forfeiture was not served on Judy. However, ordinarily a wife of a purchaser who is not a party to the contract for purchase of real estate is not entitled to notice of forfeiture on any theory that her dower interests would not be cut off unless she was served. *Eastman v. DeFrees,* 235 Iowa 488, 491, 17 N.W.2d 104, 105.

Plaintiff points out after his marriage to Judy he executed a written instrument entitled "Assignment and Conveyance" whereby Hansen assigned his entire interest in the farm to himself and Judy as joint tenants with full right of survivorship. Of course, under this instrument Judy would have more than a mere dower interest.

Plaintiff maintains the vendors had in fact actual knowledge of the assignment and had consented thereto.

The trial court found neither of the Chapins had notice or knowledge, actual or constructive, of the interest or claim of Judy Hansen under the installment contract. It is Hansen's contention the record does not support this finding.

It will be recalled that this assignment from Harold to Judy was never recorded.

Stanley Chapin testified although he was aware Harold and Judy were married and subsequently moved into and were occupying the farm in question, he at no time had any discussion with either Harold or Judy or both with reference to Harold's wish to have Judy's name included on the contract. As a matter of fact, Chapin denied having any discussion concerning the matter. On cross-examination Mr. Chapin unequivocally denied any knowledge Harold intended to transfer or claimed to have transferred any interest in the contract.

Harold testified he *believed* he told Chapin he was going to put Judy's name on the contract. He could not remember any specific incident but *assumed* he had told Chapin of his intent or that he had actually executed the assignment.

Judy had no recollection of any conversation with either Mr. Chapin or Mrs. Chapin about the matter. Her knowledge was derived solely from what Harold had told her.

Plaintiffs' argument that Chapin had constructive notice Harold had assigned his interest in part to Judy based on the fact Allan F. Keck who had acted for both Chapin and Harold in preparing the land contract some 16 months earlier also prepared the assignment from Harold to Judy is without merit.

From our de novo review we fail to find any evidence which would support a finding either Mr. or Mrs. Chapin had actual or constructive notice of the interests of Judy under the installment contract. We agree with the trial court's finding in this respect.

The case is therefore

Affirmed.