Verda Mae **MILLER**, Appellee,

v.

**AMERICAN WONDERLANDS, INC.,
et al., Appellants.**

No. 60965.

Supreme Court of Iowa.

Feb. 21, 1979.

James S. Updegraff of Donohue Law Office, West Union, for appellants.

Alice T. Koempel of Traeger & Koempel, West Union, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK, and McGIVERIN, JJ.

HARRIS, Justice.

Is it ever appropriate to order the forfeiture of a $30,000 real estate contract by reason of a $10.48 default? We believe the trial court was right in holding it was appropriate in this case. We vacate a reversing decision of the court of appeals and reinstate the judgment of the trial court quieting title in plaintiff vendor.

We adopt as our own the statement of facts from the opinion of the court of appeals:

"On October 26, 1972, plaintiff, the owner in fee simple of a 107 acre farm in Fayette County, entered into a written contract for the sale of that property to defendant for $30,000, with a down payment of $5000 and the deferred balance payable in ten $1000 annual installments beginning in October, 1973, with a balloon payment of the remainder due in October, 1983. Unpaid balances were to bear interest at the rate of six percent per year. American [the vendee, sometimes hereafter called the company] was to pay one-fourth of the 1972 real estate taxes due in 1973 and all real estate taxes for subsequent years.

"The contract also specified that the vendor could pay delinquent taxes and that such sums so advanced were due and payable on demand, or, at the election of vendor, could be added to the principal amount due under the contract. Delinquent amounts and cash reasonably advanced by either party were to draw interest at the highest applicable legal rate. The contract recited that time was of the essence and provided for forfeiture proceedings in accordance with chapter 656, The Code.

"Donald L. Kimball, president and chief executive officer of American since its inception in October, 1972, executed the contract on behalf of the [company]. . . .

"Performance of the contractual provisions by both parties proceeded smoothly until May 6, 1975, when plaintiff was notified by the county treasurer that [the company] had failed to pay the 1973 real estate taxes totaling $672.78, including penalty. Plaintiff promptly forwarded a check for this amount to her attorney, who in turn paid these taxes.

"On May 21, 1975, plaintiff served upon defendant a notice of forfeiture which stated [the company] had failed to comply with the real estate contract by failing to pay the 1973 taxes, that [plaintiff] had advanced the amount of the taxes and penalty on May 13, 1975, and . . . demanded payment of $672.78 with interest at nine percent (totalling $6.23), as provided in the contract.

"The notice also stated that the contract would stand forfeited unless [the company] cured this default and paid the reasonable costs of serving the notice within 30 days after the completion of service. Plaintiff . . . expended $4.25 in sheriff's fees for serving the notice of forfeiture and $35 in attorney's fees for preparing it.

"At some time between the service of the notice on May 21, and June 16, 1975, Kimball telephoned [plaintiff] at her home . . and, according to his testimony, promised to pay her delinquent taxes and accrued interest . . .. However, [plaintiff] testified that Kimball had agreed to pay both interest and the costs of serving the notice.

This matter was somewhat clarified in the letter written by Kimball to [plaintiff] and dated June 16, 1975 which accompanied the $672.78 check, wherein Kimball promised to mail an additional check for the interest and cost of service as soon as his bookkeeper computed the interest and plaintiff's attorney informed him of the costs involved. Plaintiff received [this] check and letter on or about June 20, after which time she cashed the check and deposited the proceeds in her bank account.

"On June 25, [plaintiff] sent the letter which Kimball had written to her attorney and advised him that she had received the check for $672.78 for the taxes but had not as yet received payment for the interest and costs. By the latter part of July, plaintiff had still not received a check for the interest and costs and on July 22, plaintiff's attorney mailed a letter to Kimball demanding payment of $4.25 for the sheriff's fee, $6.23 for accrued interest, and $35 for the attorney's fee, and advising him that unless payment of the $45.48 was made by August 1, 1975, the notice of forfeiture would be filed with the county recorder. On August 6, the notice of forfeiture and affidavit in support thereof were recorded and that same day, plaintiff's attorney mailed Kimball a letter informing him of these facts and demanding immediate peaceful possession. Although it was established that the letters written to Kimball July 22 and August 6 were prepared and mailed by plaintiff's attorney, Kimball denied ever receiving them and testified that he had no knowledge of the recording of the forfeiture until so informed by an internal revenue agent on May 4, 1976. He stated that upon receiving this information, he contacted plaintiff's attorney to inquire about the matter. The attorney responded by sending Kimball photocopies of the July 22 and August 6, 1975 letters on May 5, 1976. In its findings of fact, the trial court indicated that Kimball's credibility in this area was questionable.

"The record also reflects that on April 28, 1976, plaintiff, believing that the farm had been vacated, entered into a contract for the sale of the property to a third party for $38,000. However, during some of the time subsequent to the service of notice of forfeiture on [the company], Kimball, in an individual capacity and not on behalf of the corporation, kept some livestock on the farm and permitted various people to reside in the house located thereon in exchange for farm labor, purportedly in the mistaken belief that no forfeiture had ever been filed.

"It also appears from the record that American has experienced substantial financial difficulties since 1974. In October, 1974, a mechanic's lien in the amount of $4400 was filed against the premises."

Causing the filing of a mechanic's lien against the property was also a violation of the real estate contract. Other violations occurred during 1975 and 1976 when default judgments totaling more than $6900 were filed against the property, together with a federal tax lien of more than $2000.

On our review, we agree with the trial court in accepting plaintiff's version of disputed facts. This quiet title action was brought to perfect plaintiff's title after the contract was entered with the third party.

■ I. A threshold question, relating to the extent of the vendee's default, is whether attorney's fees incurred in the preparation of the notice of the forfeiture are a part of the "reasonable cost of serving said notice." § 656.4, The Code. In this case $35 was claimed for those services and we have no reason to question the reasonableness of that amount.

Nevertheless we hold the cost of attorney's fees, even if established as reasonable and necessary, is not includable as a part of the reasonable costs of serving notice under § 656.4. The statute makes no mention of attorney's fees. We assume the omission was deliberate. We hold the vendee, in order to comply with notice and avoid forfeiture under § 656.4, need not pay for preparation of the notice, only the reasonable costs of serving it. The $35 attorney's fees cannot be considered a part of the company's default.

■ II. The company argues that, following notice of forfeiture, plaintiff waived her right to forfeiture by accepting reimbursement for the real estate taxes. The trial court held there was no such waiver. The court of appeals agreed with this determination and we do too.

In our de novo review we are bound to review the facts and law and determine anew from credible evidence all properly presented and preserved contentions of the parties. *In re Marriage of Winegard*, 257 N.W.2d 609, 613 (Iowa 1977); rule 4, Rules of Appellate Procedure. A more specific standard for our review of the pending question was stated in *Wemer v. Long*, 185 N.W.2d 243, 247 (Iowa 1971):

". . . [W]here a vendee claims waiver of forfeiture by implication from the conduct of acts of a vendor, the vendee must establish by a preponderance of the evidence *unequivocal* conduct on the part of the vendor, *clearly establishing the vendor regards the contract as in full force and effect subsequent to the forfeiture.* The question of waiver is ordinarily a question of fact to be determined from all of the facts and circumstances shown by the record evidence in the case." [Emphasis added.]

The record in this case does not establish a waiver of forfeiture. Kimball telephoned plaintiff and promised to pay the taxes, interests thereon, and the costs of serving the notice. The promise, as has been mentioned, was repeated in writing when the check for taxes was sent to plaintiff. Thereafter plaintiff reminded Kimball of the obligation to pay interest and costs. The letter of reminder, dated July 22, accorded the company until August 1 to make payment. The forfeiture notice and affidavit were not filed until August 6.

In *Hansen v. Chapin*, 232 N.W.2d 506, 510 (Iowa 1975) we held the facts did not show a waiver of forfeiture. We reached a similar conclusion under the facts shown in *Wemer*, supra. In *Babb's, Inc. v. Babb*, 169 N.W.2d 211, 213 (Iowa 1969) we held conduct of the vendor was inconsistent with forfeiture, and consequently we found a waiver. However we went on to point out:

"We do not mean to indicate that there might not be some instances in which the entire record would show an intent to pursue the forfeiture even though a partial payment had been accepted. But when, as here, partial payment has been accepted and retained beyond a reasonable time after purchasers failed to pay the full delinquency within the 30 day period; where vendors knew purchaser was attempting to negotiate a sale and apparently approved of this procedure; and where vendors continued to pay rent to purchaser after notice of forfeiture, we believe it is clear they recognized the existence of the contract and intended to waive the right to forfeit it. There was no indication of any different intent until the notice and return of service were filed August 15." 169 N.W.2d at 214–215.

We conclude the company has not met its burden of proof on its claim of waiver of forfeiture.

■ III. The court of appeals, after finding there had been no waiver of forfeiture by plaintiff, held it would be inequitable in this case to declare a forfeiture, stating:

"Sitting as a court of equity, we are obligated to review this case on the basis of equitable as well as legal principles, always keeping in mind that forfeitures are not favored. In the final analysis, we agree with the defendant that the ultimate issue to be resolved is whether equity will permit the forfeiture of a $30,000 contract for a $10.48 deficiency. We conclude that it will not."

Support for the view of the court of appeals was found in *Babb's*, supra, 169 N.W.2d at 214 and in *Watson v. Chapman*, 244 Iowa 56, 63, 55 N.W.2d 555, 559 (1952). But we have taken some pains to point out that the fact forfeitures are not favored does not mean they will never be enforced. *Van Hosen v. Barkers Trust Company*, 200 N.W.2d 504, 507–508 (Iowa 1972); *Spangler v. Misner*, 238 Iowa 600, 608, 28 N.W.2d 5, 9 (1947). See also Iowa Land Installment

403

Contracts: Acceptance of Part Payments as Waiver, 55 Iowa L.Rev. 729, 732 (February 1970).

The amount of default in this case is trifling when compared with the value of the real estate. On the other hand the default was flagrant and, we must assume, stubbornly deliberate. If we were to hold this trifling amount will not trigger a forfeiture we would in effect be repealing the statute. Under such a rule trifling amounts could never be recovered. We think that where the amount of a default is only trifling, that is only one factor to be considered as a part of equity's abhorrence of forfeiture. The fact that the amount in default here was trifling must be balanced against the showing that the default was deliberate and that an opportunity was given to make payment.

Under these circumstances equity will indeed order a forfeiture of a $30,000 real estate contract by reason of a $10.48 default.

The decision of the court of appeals is vacated. The judgment of the trial court is affirmed.