John E. MAY and Edith L. May,
Husband and Wife, Appellees,

v.

Mabel Irene OAKLEY, Executor of the
Estate of Donald G. Oakley,
Deceased, Appellant.

Mabel Irene OAKLEY, Individually, and
Mabel Irene Oakley, As Executor of the
Estate of Donald G. Oakley, Deceased,
Appellant,

v.

John E. MAY and Edith L. May,
Husband and Wife, Appellees.

No. 85–1563.

Supreme Court of Iowa.

June 17, 1987.

D.W. Harris, Bloomfield, and Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellant.

Mark McCormick of Belin, Harris, Helmick, Tesdell, Lamson, Blackledge & McCormick, Des Moines, and R. Kurt Swaim, Bloomfield, for appellees.

LARSON, Justice.

On September 28, 1979, John E. May and Edith L. May agreed to sell their 320–acre, Davis County farm to Donald G. Oakley and Mabel Irene Oakley for $338,000, payable in installments. The contract allocated $50,000 of the purchase price to the residence and $288,000 to the land and provided that the first $50,000 paid would be considered to be for the purchase of the farm residence. A mortgage by the Mays to the Farmers Home Administration was assumed by the Oakleys as a part of the purchase price.

The Oakleys paid the first $50,000 and several of the subsequent annual installments. Mrs. Oakley (Irene) defaulted on the 1985 payment, however, and she was served with a notice of forfeiture. (Donald Oakley had died in the meantime.) Irene responded to the notice of forfeiture by writing a letter to the Mays' lawyer, stating that the $50,000 allocated to the residence had been paid, and demanding a deed to the residence portion of the farm.

The Mays filed a declaratory judgment action to determine if they were required to give a separate deed, and Irene filed an action to enjoin the forfeiture as to the residence. (She did not challenge the forfeiture of the balance of the 320 acres.) The declaratory judgment and injunction actions were consolidated for trial.

Following a trial in equity, the district court held that Irene was not entitled to a deed to the residence and denied the injunction. Irene appealed. (The Mays cross appealed from a prior order for temporary injunction, but that matter is not before us.)

The court of appeals reversed, ordering the Mays to convey the residence to Irene by a warranty deed. The Mays sought further review, which we granted. We now vacate the court of appeals decision and affirm the judgment of the district court.

In claiming her right to a deed to the residence, Irene relies on the fact that the contract allocated a certain amount of the purchase price to the residence, $50,000, and required it to be paid out of the first installments. The allocation of the purchase price is found in paragraphs one and thirteen of the contract which provided in part that:

1. The TOTAL PURCHASE PRICE for the above described real estate, which includes separately both Sellers' residence portion and farm portion, is the sum of Three Hundred Thirty-eight Thousand Dollars ($338,000.00). Of said total sum the amount of Fifty Thousand Dollars ($50,000.00) is allocated as total purchase price for the residence and the amount of Two Hundred Eightyeight Thousand Dollars ($288,000.00) is allocated as total purchase price for the sale of the farm. Buyers shall make payments of all sums to residence of Sellers in Davis County, Iowa, as follows:

. . . .

13. ALLOCATION. Of the aforesaid total purchase price, it is expressly understood and agreed that the amount of Fifty Thousand Dollars ($50,000.00) due and payable on or before October 1, 1979, shall be considered solely and exclusively as the consideration paid for the residence and appurtenant yard located approximately at the center of the above described real estate, constituting two acres more or less . . . .

It is agreed that the purpose for allocating the purchase price was to allow both the sellers and the buyers to take advantage of certain income tax breaks available to them. The Mays sought to exempt the gain from the sale of their residence from capital gain tax. See 26 U.S.C. § 121(d)(5) (1982). In order to accomplish this, an allocation of the purchase price is required:

Where part of the property is used by the taxpayer as his principal residence and part is used for other purposes, an allocation must be made to determine the application of the section.

Treas. Reg. § 1.1034–1(3)ii (1986). Similarly, the Oakleys wanted to allocate the purchase price in order to make a tax-free exchange of their fifty-acre Illinois farm home for the Mays' farm and farm home.

While Irene concedes that the original purpose for the allocation was tax-based, she argues that the effect of the allocation language is to make the contract divisible. She supports that argument by pointing to the fact that she has fully paid all of the amounts allocated by the contract to the purchase of the residence under paragraph one, which provides in part:

(a) Upon the execution of this agreement, Buyers hereby pay to Sellers the sum of Ten Thousand Dollars ($10,000.00), receipt of which is hereby acknowledged by Sellers, as a downpayment upon the purchase price of the residence portion of the above described real estate.

(b) On or before October 1, 1979, Buyers shall pay to Sellers the sum of Forty Thousand Dollars ($40,000.00) as the balance of the purchase price of said residence.

The Mays counter that the first $50,000 was required to be paid toward the residence only to facilitate the income tax planning of the parties.

Irene testified that she had left the contract negotiations to her husband and that she signed the papers as approved by him. She testified that she would not have signed the contract, however, if she had understood it was not divisible or that she would lose her place to live if the farm contract was forfeited.

Despite Irene's present understanding, the facts do not support her claim that the parties intended the contract to be divisible. The Oakleys did not request a deed to the residence (although the $50,000 allocated to it had been paid in 1979) until after the notice of forfeiture was served on Irene in 1985. We must give effect to the intent of the parties at the time the contract was executed, not an intent subsequently developed. *See Home Fed. Sav. & Loan Ass'n v. Campney,* 357 N.W.2d 613, 617 (Iowa 1984).

We believe that the contract does not bear the construction given to it by Irene and the court of appeals. While the allocation of the purchase price and the requirement for immediate payment for the residence lend some support for that construction, the contract as a whole indicates to us that it was not intended to be divisible.

Paragraphs eleven and twelve, for example, anticipate that only one deed would be executed and placed in escrow. They provide:

11. DEED. Upon the execution of this contract, Sellers agree to contemporaneously execute and deliver to Buyers *a warranty deed* in conformity with the standards of the Iowa State Bar Association subject only to liens and encumberances of record upon the execution of this contract, or hereafter created by Buyers, and further subject to such zoning regulation and easements of record for public utilities and established roads and highways.

12. ESCROW OF DEED. Upon the approval of the abstract of title by Buyers, Sellers shall contemporaneously execute and deliver *a warranty deed* in favor of Buyers, or Buyers assigns, to Vern M. Ball, Attorney at Law of Bloomfield, Iowa. It is agreed that said Vern M. Ball is the Escrow Agent of the parties and that he shall hold said deed until the contract has been complied with at which time he shall deliver said deed to Buyers or their assigned.

(Emphasis added.)

Paragraph thirteen of the contract, which first allocates the purchase price, then provides:

It is hereby agreed and understood that although the aforesaid acreages are divisible by nature, and divisible by purchase allocation amounts, *a single deed* shall be delivered as aforesaid in conveyance of both said tracts, and in satisfaction of the terms and conditions of this contract.

(Emphasis added.)

In addition, there is a significant problem regarding the legal description for the residence; it is not clear in the contract just where it is located. While it provides some guidance as to the size and location of the residence, those provisions are inconsistent. Paragraph five provides that

[t]he residence portion is herein described and explained as being the dwelling house, garden and yard adjacent thereto, which is partially bounded by a fence and a roadway[;]

while paragraph thirteen describes the residence as

the residence and appurtenant yard located approximately at the center of the above described real estate, constituting two acres more or less of the above described property, to include the actual residence structure, yard, and circle driveway.

Irene was not sure where the boundaries of the residence would be, but testified that it "would include from the side yard back behind the machine shed and just about cut that barn in half."

The court of appeals held that the lack of a legal description would not prevent enforcement of the contract if the property could be located. It also held that the parties should attempt to establish a legal description for the deed and, if they could not agree, a court would appoint a master to do it for them.

While we agree that an indefinite description would not be an insurmountable problem if the contract were truly divisible, we believe the lack of specificity in regard to the description has a more profound effect: it shows that the parties did not anticipate or intend that separate deeds would be given.

Our view that the whole 320 acres would stand as security for the contract indebtedness is further reinforced by its provision that forfeiture of the contract would be appropriate if it was breached "in any respect." A breach of the contract payments for the failure to pay the installments due on the farmland, we believe, is such an event.

While it is true, as the court of appeals notes, that equity abhors a forfeiture, we agree with the Mays that it does not abhor a forfeiture enough to override established legal principles. *See Miller v. American Wonderlands, Inc.*, 275 N.W.2d 399, 402 (Iowa 1979). We vacate the court of appeals decision and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

All Justices concur except CARTER and NEUMAN, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent. Parties who shape a transaction in a particular manner in order to produce favorable tax consequences should correspondingly be saddled with any unfavorable consequences which flow from casting the transaction in that form.

The contract res is divided into two portions. The sellers sold the residence portion for a separate consideration. The buyers have paid the consideration allocated to the residence portion in the contract. Consequently, in the absence of contrary provisions in the agreement, they should be declared to be the equitable owners thereof free of any lien or right of forfeiture attributable to the consideration allocated to the other property. I cannot interpret the contract as rescuing the sellers from that result.

The provision calling for a single deed merely describes the manner in which the transaction will be handled if the buyers ultimately pay for both portions of the contract res. This does not suggest that one of the parcels, if fully paid for, remains as security for payment of amounts owed on the other parcel. The rights of the parties should be determined by a court of equity in accordance with the property interests granted by the contract rather than the procedures provided to implement those interests. Notwithstanding the provision for a single deed, a court of equity may order a separate conveyance to the buyers of that portion of the res for which they have made full payment.

There is no merit in the sellers' claim that lack of a precise description prevents setting off the residence property to the buyers. The separately sold tracts are sufficiently capable of identification that a court of equity can set off the residence property from the remainder.

NEUMAN, J., joins this dissent.